STAFFORD et ux. v. ROADWAY TRANSIT
CO. (BARRINGER, Third-Party
Defendant).

BARRINGER v. ROADWAY TRANSIT CO.

Civil Actions Nos. 62, 63.

District Court, W. D. Pennsylvania.

Feb. 13, 1947.

Thomas B. O'Connor, of Erie, Pa., for plaintiffs Barthol and Margaret Stafford.

Maurice J. Coughlin, of Erie, Pa., for plaintiff and third-party defendant William Charles Barringer.

Frank B. Quinn, of English, Quinn, Leemhuis and Plate, all of Erie, Pa., for defendant Roadway Transit Co.

WALLACE S. GOURLEY, District Judge.

This is a trespass case arising out of an automobile accident.

Actions have been filed by Barthol Stafford and Margaret Stafford, his wife, William Charles Barringer in his own right, and William Charles Barringer, trustee ad litem for the heirs of Mary Anne Barringer, his wife, against the Roadway Transit Company, a Michigan corporation.

In connection with the action of Barthol Stafford and Margaret Stafford, his wife, against the Roadway Transit Company, said defendant by appropriate motion secured leave of Court to bring upon the record as an additional or third-party defendant William Charles Barringer, who was the operator of the automobile involved in the accident with the tractor-trailer motor vehicle of the Roadway Transit Company.

Counsel for William Charles Barringer, as representative of the estate of his wife, Mary Anne Barringer, by written motion made on the 23rd day of October, 1946, which was after the case had been heard by the Court, requested leave to amend the caption of the complaint and summons by adding thereto William Charles Barringer, trustee ad litem for the heirs of Mary Anne Barringer, his wife, for the use of William Charles Barringer, administrator of the estate of Mary Anne Barringer, plaintiff, and William Charles Barringer in his own right. This motion was granted and allowance given by the Court on the 27th day of November, 1946.

All of the causes of action arise as a result of a rear-end collision between a motor vehicle owned by the plaintiff Barthol Stafford, and operated by the plaintiff William Charles Barringer, and a tractor-trailer motor vehicle owned by the Roadway Transit Company. Barthol Stafford, Margaret Stafford and Mary Anne Barringer were occupants of the passenger motor vehicle at the time of the collision.

The plaintiffs failed and neglected to request a jury trial within the period of time provided by the Federal Rules of Civil Procedure, rule 38 (b). Motion was subsequently made for the award of a jury trial in each of said cases to other members of this Court and with objection of the defendant being made, the award for a jury trial was denied. By agreement and stipulation of the parties, all actions were tried together.

The Court, therefore, has heard the evidence, considered the briefs, suggested findings of fact and conclusions of law, and, in addition thereto, made a personal visit and had observation of the location of the accident prior to the taking of testimony, and in conformity with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, makes the following comment, finds the facts specifically and separately, and states conclusions of law thereon as follows:

Considerable testimony was introduced as to the circumstances which surrounded the accident, and no useful purpose would be gained by referring specifically to the testimony of each witness called by the respective party litigants. The pertinent facts are as follows:

On the night of June 20, 1942, arrangements had been made by the Barringer and Stafford families that a trip would be taken from Erie, Pennsylvania, to Buffalo, New York, for the purpose of attending a midnight show in the City of Buffalo, this being a Saturday night. The two families had been friends, and about 8:30 in the evening on June 20, 1942, Barthol Stafford and his wife drove to the Barringer home, and then the trip was made to Buffalo. The automobile used for the occasion was a 1940 Chevrolet sedan and was owned by Barthol Stafford. During the trip to Buffalo the car was driven by Barthol Stafford, and after arrival at that city the parties proceeded to attend the show. After the show Mr. Stafford secured his car from a parking lot and the parties made ready to proceed home. After the car was secured arrangements were made between the parties whereby Barringer was to drive the car home as a result of Stafford being tired, and during the greater part of the trip home and at the time of the accident, Mr. and Mrs. Stafford were sleeping in the back seat, and Mrs. Barringer was asleep beside her husband in the front seat. The accident occurred around 4:00 A. M. on the morning of June 21, 1942. The highway at the scene of the accident being approximately 20 feet wide, and the berm on each side of the highway at or near the scene of the accident varying in width from 5 to 12 feet. The condition of the berm was of such construction that it was available and suitable for vehicular use. There was a slight curve on the roadway to the left as the vehicle approached from Buffalo, with a slight downward grade in the direction of Erie, but, under normal atmospheric conditions, nothing existed to impair the vision of an individual driving from Buffalo at or near said curve in the direction of Erie to the place of the accident for a distance of approximately 1600 feet. At the time of the accident it was dark, the weather was clear and no atmospheric conditions existed which would tend to impair the normal vision other than the condition of darkness.

A short time prior to the collision which gave rise to the causes of action now being considered, an accident had occurred between two other parties. One of the vehicles was parked off the highway in the direction of Buffalo, at a point varying in distance from 50 to 200 feet from the scene where the accident occurred that is involved in this proceeding. The other motor vehicle was parked off the highway some distance from the scene of the accident which gives rise to the causes of action now being considered at a point nearest the City of Erie. After the first accident, fusees were placed or lighted, and as the operator of the Roadway Transit Company truck approached the scene of the

accident, he slackened the speed of his truck to approximately five miles an hour, and for a period of approximately one minute the tractor-trailer motor vehicle was operated either on the berm or the extreme right side of the highway until the accident occurred. During this period of time the truck driver, who was involved in the first accident, engaged in a conversation with the driver of the Roadway Transit Company vehicle, walking along the side of the truck during this period of time, and it was during the end of said conversation that the car operated by Mr. Barringer, and occupied as heretofore explained, collided with the left rear-end of the Roadway Transit vehicle, causing the injuries which give rise to the causes of action herein considered.

The rear-end collision was caused due to the inability of the driver Barringer to avoid the striking of the Roadway Transit tractor-trailer, and in his effort to turn to the left to avoid the truck, the right side of said car came into a collision with the left rear of the truck.

As a result of the accident Barthol Stafford and Margaret Stafford, his wife, were injured, and damage was done to the motor vehicle of Barthol Stafford. William Charles Barringer, the driver of the motor vehicle, received personal injuries, and his wife, Mary Anne Barringer, was instantly killed. The question for determination in each of the cases is whether or not the defendant, Roadway Transit Company, and/or William Charles Barringer were guilty of negligence in creating the condition out of which the accident resulted, and if contributory negligence existed on the part of any or all of the plaintiffs.

In connection with all of the cases herein pending, certain general principles of the law of negligence will have application in the determination as to whether or not a right of recovery exists. The principles involved in the Stafford case will be different in some respects to those which exist in the Barringer case. This is true for the reason that in the Stafford case the Roadway Transit Company, the original defendant, and William Charles Barringer are the defendants. In the Barringer cases, both in his individual right and as trustee for the use of the administrator of his wife's estate, Barringer maintains his action solely against the Roadway Transit Company. In addition thereto, there are many legal principles involved in each of these cases which do not have application in all of the cases. In order to intelligently and thoroughly approach the question of the right of recovery of any or all of the plaintiffs, it becomes necessary for the Court to consider each action separately and make application of the law which applies to that individual case when considered in light of the facts found by the Court.

Although specific findings of fact and conclusions of law will be made by the Court, in order to intelligently apply the law, the Court will generally refer to facts which have application to the legal question involved.

■ The first problem before the Court is, therefore, the orientation of the facts in this case into the law applicable in federal court. Federal jurisdiction is invoked solely on account of diversity of citizenship of the party litigants; there is no independent federal question involved before the Court in any of the claims. As a result thereof, the substantive law to be applied is the law of the Commonwealth of Pennsylvania, and the Court must, therefore, determine, by all of the available decisions which might exist, what rules of law have been accepted and established in the Commonwealth of Pennsylvania since it is the duty of the federal court to ascribe to the Acts of Assembly laws and decisions as made by the highest courts in this Commonwealth. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Mitchell v. Ottinger, 3 Cir., 105 F.2d 334; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Klaxon Co. v. Stenton Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

■ If no interpretation or construction has been placed on the Acts of Assembly

which have application to the facts in this case by the Supreme Court of Pennsylvania, it is next necessary for the federal court to ascertain whether or not any alternative determination of the substantive law has been made by any other appellate tribunal in the Commonwealth of Pennsylvania, and if this has not been done, whether or not the trial courts are in agreement. McClaskey v. Harbison-Walker Refractories Co., 3 Cir., 138 F.2d 493; Overfield et al. v. Pennroad Corp. et al., 3 Cir., 146 F.2d 889; Bastian et al. v. Baltimore & O. R. Co., 3 Cir., 144 F.2d 120.

Where the Supreme Court of Pennsylvania, or any other appellate tribunal in the Commonwealth of Pennsylvania has made no authoritative determination of the questions of law which exist, or the trial courts are in disagreement in connection with any point of substantive law, it is the duty of the federal court to attempt to determine by all available data the construction which the Supreme Court of Pennsylvania would have placed upon any pertinent Pennsylvania statutes. McClaskey v. Harbison-Walker Refractories Co., 3 Cir., 138 F.2d 493.

The Court will find that on the morning of this accident, the plaintiff Barringer was operating the motor vehicle owned by the plaintiff Stafford, and that at the time of the accident and for the greater part of the period prior thereto, Mrs. Barringer and Mr. and Mrs. Stafford were asleep in the motor vehicle. That when the automobile of Stafford was turned over to Barringer for the purpose of driving from Buffalo to Erie, it was the intention of Stafford to place the sole and absolute control of the motor vehicle in Barringer. That Stafford was justified in relying on the capabilities of Barringer since they were friends and well acquainted; Barringer knew the condition of the highway which was to be traversed; Barringer was accustomed to keeping awake at nights since for some period of time he had worked the night shift at the General Electric Corporation, and it was the intention of Stafford to not remain awake or observe the driving during the period of time that it would be found necessary to make the return trip.

That before the accident, which is now being considered by the Court, a previous accident occurred and, as a result thereof, some confusion existed on the highway at and near the scene of the present accident and at the time the motor vehicle of the Roadway Transit Company reached the point of this accident. That one or more flares were burning when the Roadway Transit Company truck approached; that one of the motor vehicles involved in the first accident, which was a truck, was parked off the highway or on the berm with the left front headlight burning, illuminating the roadway for some distance in the direction of Barringer, the right front headlight of said motor vehicle having been damaged and not being lighted as a result of the accident in which said motor vehicle had been involved. When the truck of the Roadway Transit Company approached the location where this accident occurred, it was traveling at a rate of speed of approximately 5 miles an hour, and continued to be so operated for a period of approximately one minute. During this period of time the operator of said motor vehicle engaged in a conversation with the driver of one of the motor vehicles involved in the first accident. During part of this period of time, the truck was being driven on the highway, part of the time on the highway and berm, and part of the time on the berm alone. That as a result thereof, conditions existed at the scene of the accident which were unusual, and which created a hazardous condition to other operators of motor vehicles who had occasion to approach said location on the highway from either the direction of Buffalo or Erie. That the tractor-trailer of the Roadway Transit Company was not equipped with rear lamps or lights in accordance with the provisions of the law of the Commonwealth of Pennsylvania.

When the motor vehicle operated by Barringer reached the point on the highway hereinabove referred to, it was being driven at a rate of speed of approximately forty (40) miles an hour, which speed was reduced to about thirty (30) miles an hour at the time of the accident. The facts and circumstances were such that the Court does not believe that Barringer was blinded

by the left front headlight of the motor vehicle parked on the berm of the highway to such an extent that would have created a condition where he could not have observed the slow moving tractor-trailer of the Roadway Transit Company if he had been properly observant. The Court believes that with comment being made solely as to the facts just referred to, it will be possible to consider in detail and with thoroughness the individual claims of the respective party-plaintiffs.

The Court will first consider whether William Charles Barringer has a right to recover.

The claims of William Charles Barringer must be considered in three different categories or classifications:

I. Claim of William Charles Barringer for personal injuries to himself.

II. Claim of William Charles Barringer under the Wrongful Death Statute.

III. Claim of William Charles Barringer under the Survival Statute.

### Individual Claim of Barringer:

In considering the individual claim of William Charles Barringer for personal injuries sustained by him in said accident, it is necessary for the Court to first decide whether William Charles Barringer was guilty of contributory negligence which brought about the accident, and resulting injuries sustained thereby. This is true for even if the Roadway Transit Company was guilty of any negligence, Barringer would not be allowed to recover in his own right if he were guilty of any negligence which contributed to the accident.

■ Contributory negligence should not be declared by the Court, as a matter of law, except in clear cases where reasonable men cannot differ as to the factual situations which exist. Atkinson v. Coskey, 354 Pa. 297, 47 A.2d 156; Tanoredi v. M. Buten & Sons, 350 Pa. 35, 38 A.2d 55.

■ In this case the Court will find as a conclusion of fact, after consideration of all the testimony in the case, that Barringer was guilty of contributory negligence and, as a result thereof, has no right to recover for the personal injuries sustained by him

or any expenses found necessary as a result thereof. Vierling v. Fry, 354 Pa. 66, 46 A.2d 473.

### Action Under Wrongful Death Statute:

■ The wrongful death and survival actions, although now redressed in one suit or trial, under the rules promulgated by the Supreme Court of Pennsylvania, Pa. R.C.P. 213(e), 12 Purdon's Penna. Statutes Annotated, Appendix, are distinct and separate actions. They are entirely dissimilar in nature and are cumulative but not alternative. The Wrongful Death Statute was unknown to the common law and, therefore, rests upon the basis of legislative enactment. It is governed and regulated by the Act of April 15, 1851, P.L. 669, § 19, as amended by the Act of April 26, 1855, P.L. 309, as further amended by the Act of June 7, 1911, P.L. 678, and the Act of May 13, 1927, P.L. 992, 12 Purdon's Penna. Statutes Annotated, §§ 1601 to 1604, inclusive.

Under the provisions of Pa. R.C.P. No. 2202(a), 12 Purdon's Penna. Statutes Annotated, Appendix, which applies only to wrongful death actions, the action shall be brought by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death.

The Supreme Court of Pennsylvania has further provided, Pa. R.C.P. 2202(b), 12 Purdon's Penna. Statutes Annotated Appendix, if no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover in such action as trustee ad litem on behalf of all persons entitled to share in the damages.

■ In other words, during the first six months after death the personal representative of the deceased is the only person entitled to sue under the Wrongful Death Statute; during the next six months either the representative of said deceased or any person entitled to share in the damages may sue, but the action which is first brought bars the institution of any other action.

564

The cause of action filed by Barringer under the Wrongful Death Statute was originally entitled William Charles Barringer, Trustee Ad Litem for the Heirs of Mary Anne Barringer, his wife. .It would, therefore, appear that said action was properly filed if the suit was instituted within the applicable period of the statute of limitations existing in the Commonwealth of Pennsylvania.

Under the Wrongful Death Statute the surviving spouse is the individual who is required to institute the action in the manner heretofore set forth for the exclusive benefit of the surviving spouse, children or parents of the decedent, surviving him or her and living at the time the action is instituted, and the amount which is recovered is taken in the same manner as the assets of the decedent's estate are administered in a case of intestacy and are free from all claims or liability to the creditors of the decedent. McFadden v. May, 325 Pa. 145, 148, 189 A. 483.

Another element of damage under the Wrongful Death Statute, which the next of kin is entitled to recover, is the funeral expenses and any other obligations which were paid or incurred as a result of the accident, or such other expenses as could be recovered in an action begun by the injured or deceased person during his lifetime. Act of May 13, 1927, P.L. 992, 12 Purdon's Penna. Statutes Annotated, § 1604; Funk v. Buckley & Co., Inc., 158 Pa.Super. 586, 45 A.2d 918; Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659; Gaydos v. Domabyl, 301 Pa. 523, 152 A. 549; Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267; Stegner v. Fenton, 351 Pa. 292, 40 A.2d 473.

The fact that a beneficiary is guilty of negligence which contributed to the death of a decedent does not prevent recovery unless he is the·sole beneficiary. It does, however, affect the amount recovered. If one of the beneficiaries is guilty of contributory negligence, he is not allowed to benefit by the statute.· The amount which he would have received, had he not been negligent, is deducted from the amount recoverable by the dependents as a group; the rest being distributed among the survivors as though the negligent beneficiary did not exist. Since under the facts in this case William Charles Barringer, in the opinion of the Court, was guilty of negligence and he is the sole next of kin, he would not be entitled to recover under the Wrongful Death Statute in the ·Commonwealth of Pennsylvania, regardless of the negligence of the Roadway Transit Company. Restatement of the Law of Torts, Negligence, Para. 493, p. 2179; Penna. Annotations to the Restatement of the Law of Torts, Vol. 2, Para. 493, p. 285.

The accident occurred on the 21st day of June, 1942, and the cause of action was not filed by William Charles Barringer as trustee ad litem for the heirs of Mary Anne Barringer, his wife, until June 20, 1944. Consequently the matter of damages need not be considered by the Court in the action under the Wrongful Death Statute for the reason that said cause of action is barred by the statute of limitations, which is ·a period of one year from the date of the accident. Stegner v. Fenton, 351 Pa. 292, 40 A.2d 473.

Action Under Survival Statute:

This action is filed under the provisions of Section 2 of the Act of July 2, 1937, P.L. 2755, Para. 2, 2C Purdon's Penna. Statutes Annotated § 772.

An action brought under the Survival Statute is not a new cause of action at all, but merely continues in the decedent's personal representatives the right of action which accrued to the deceased at common law because of the tort; ·damages recoverable are measured by the pecuniary loss occasioned to the deceased, and, therefore, to his estate by the negligent act which caused his death. In other words, the action commenced by the representative of the deceased's estate is the same action which the decedent might have commenced and prosecuted if he had lived. Stegner v. Fenton, 351 Pa. 292, 40 A.2d 473; Pezzulli v. D'Ambrosia, 344 Pa. 643, 647, 26 A.2d 659.

A suit by a personal representative under the Survival Statute is identical to that which the decedent might have commenced and prosecuted during his lifetime, and, therefore, governed by the same

measure of damages. It is but logical, therefore, to conclude, the legislature not having provided to the contrary, that the same limitation as to time when suit may be instituted governs, whether the action be brought by the injured person during his lifetime or by his personal representative under the Act of 1937 after his death; that is, as set forth in the Acts of 1713 and 1895, 12 P.S. §§ 31–34, "within two years from the time when the injury was done." Stegner v. Fenton, 351 Pa. 296, 40 A.2d 473.

Since the accident occurred on the 21st day of June, 1942, and the cause of action was filed on June 20, 1944, the proceeding under the Survival Statute was within two years from the time when the accident occurred or when the injury was done.

Under the provisions of Pa.R.C.P. 213(e), 12 Purdon's Penna. Statutes Annotated, Appendix, it is provided that a cause of action for the wrongful death of a decedent and a cause of action for his injuries which survive his death may be enforced in one action, and if independent actions are commenced, they shall be consolidated for trial.

The cause of action originally filed by Barringer was entitled William Charles Barringer in his own right and William Charles Barringer, Trustee Ad Litem for the Heirs of Mary Anne Barringer, his wife. After the completion of all the testimony, counsel for William Charles Barringer on the 23rd day of October, 1946, by a written motion requested leave of Court to amend the caption of the complaint and summons by adding thereto William Charles Barringer, Trustee Ad Litem for the Heirs of Mary Anne Barringer, his wife, for the use of William Charles Barringer, Administrator of the Estate of Mary Anne Barringer, and William Charles Barringer in his own right. This motion was granted and allowance given by the Court on the 27th day of November, 1946.

Rule 2202(b) of the Pennsylvania Rules of Civil Procedure, 12 Purdon's Penna. Statutes Annotated Appendix, provides: "(b) If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages." This rule was to avoid a multiplicity of actions. Under the action started by Barringer in this proceeding, he acts as trustee ad litem on behalf of any or all persons entitled to share. The allowance of the amendment to permit the personal representative of the decedent's estate to become a party to this action and claim a right of recovery through the trustee ad litem appears proper since the manner or title in which one beneficially interested may appear is not important. Rowles v. Evanuik, 350 Pa. 64, 38 A.2d 255.

Amendments should be allowed with great liberality at any stage of the case unless they violate the law, as, for example, by introducing a new cause of action after the statute of limitation has run, or prejudice the rights of the opposing party. This is necessary since otherwise justice would be defeated through a mere mistake as to the form or title of the action. Since the name of Barringer was properly upon the record as the legal plaintiff, it does not appear to me to be of any concern whether his name appears as trustee ad litem or as the administrator of the Estate of Mary Anne Barringer, his wife, and as a result thereof, it was the duty of the Court to grant the motion for leave to amend. Echevarria v. Texas Co., D.C., 31 F.Supp. 596; Miners' Savings Bank at Pittston v. Dougherty, 342 Pa. 273, 20 A.2d 287; Usner v. Duersmith, 346 Pa. 494, 31 A. 2d 149; Gentile v. Philadelphia & Reading R. Co., 274 Pa. 335, 340, 118 A. 223; Rowles v. Evanuik, 350 Pa. 64, 38 A. 2d 255.

Since it has been found that a cause of action under the Survival Statute is properly before the Court, it now becomes necessary to consider two matters:

(a) Does William Charles Barringer as the representative of the estate of the wife have the right to recover under the Survival Statute?

(b) If a right to recover exists, what is the measure of damages?

I have been unable to find and counsel have not referred to any authority in the Commonwealth of Pennsylvania which

would govern the questions just above mentioned.

As a result thereof, since the Supreme Court of Pennsylvania nor any other appellate tribunal has made no authoritative determination of the questions of law which exist, and no consideration appears to have been given the matter by the trial courts, it is the duty of the federal court to attempt to determine by all available data the construction which the Supreme Court of Pennsylvania would place upon the survival statute as to the right of recovery. McClaskey v. Harbinson-Walker Refractories Co., 3 Cir., 138 F.2d 493.

Query: Does the representative of an estate in an action filed under the Survival Statute in the Commonwealth of Pennsylvania have a right to recover damages in behalf of said estate against a third person where the representative of said estate is—

1. The surviving husband of the deceased;

2. The sole next of kin of the deceased;

3. Guilty of negligence which contributed to the death of his wife together with the joint and concurring negligence of a third person: and

4. Is the sole person entitled to share in the distribution of said estate under the Intestate Laws of the Commonwealth of Pennsylvania?

The cases in Pennsylvania and other jurisdictions which I have been able to find which lend any assistance in the consideration of this problem, although not directly in point, are as follows:

In the case of Minkin v. Minkin, 336 Pa. 49, 7 A.2d 461, there was a cause of action by a mother as statutory plaintiff, suing in behalf of her minor son against herself individually. The cause of action was based on the negligence of the mother bringing about the death of the father of the minor plaintiff. The court in its opinion stated that the measure of damages to which the minor son was entitled was the value of the decedent's life to the minor child, and since the mother or widow was responsible for the accident, through her negligence, the widow was not entitled to recover in her own behalf.

In connection with the case just cited, although it is not stated in the opinion, the action filed by the mother in behalf of the minor plaintiff would by necessity have to be filed under the Wrongful Death Statute. Also, there is nothing in the opinion which lends any assistance in an effort to reach a satisfactory conclusion as to whether or not a recovery would have been permitted the wife under the Survival Statute if a third party also contributed to the death of the husband, together with the negligence of the wife.

In the case of Kaczoroski, Appellant, v. Kalkosinski, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267, a wife was in an automobile driven by her husband and an accident occurred in which both were killed. The surviving parent of the daughter brought suit against the administrator of the husband's or son-in-law's estate, alleging that the death was due to the husband's or son-in-law's negligence and that it deprived the parent of the daughter's regular contributions to his support. The action was filed under the Wrongful Death Statute which specifically gave a right of action to a parent where no surviving spouse or child are left to survive. The right of action is derivative not from the person of the deceased but from the tortious act of the third person. The negligent act of the husband upon the person of the wife does not cease to be an unlawful act although the husband may be exempt from suit or liability. The measure of damages is the loss of pecuniary benefits which the persons named in the action would have received from the deceased had death not interfered.

This action was filed under the Wrongful Death Statute and the negligence of a third person was not involved, and, as a result of which, no real assistance can be gained from this case when it is considered in the light of the facts which exist in the case before this Court for adjudication.

In the case of Moore, Adm'x, v. Prudential Insurance Co. of America, 342 Pa. 570, 21 A.2d 42, policies of life insurance were issued upon the life of Joseph W. Moore with his wife being named as beneficiary. The wife shot and killed her husband, and plead guilty to the crime of voluntary manslaughter. She filed an action against the

insurance company as administratrix of the estate of her husband. The defendant contended to permit the payment of the proceeds to the wife as administratrix of her husband's estate is that, upon distribution by the orphans' court, she may obtain, by inheritance, a part of the proceeds and thus profit indirectly from the crime she committed. The court held it is not within the province of the defendant to raise that question. No problem of descent and distribution affects its liability as established by the policies. It has nothing to do with the application of the money. The orphans' court is the tribunal to determine to whom the distribution of the estate of the insured, including the proceeds of these policies, should be made.

The case just cited lends some assistance in considering the question herein involved for the reason that it is set forth that no problem of descent or distribution affected the liability of the insurance company under its contract. In the case now before the Court, no problem of descent or distribution in any way affects the liability of the Roadway Transit Company to the Estate of Mary Anne Barringer, since the administrator has exactly the same right of action which the deceased would have had if she had lived.

It was further held that if the wife should receive in the orphans' court any part of the proceeds of the policies after payment of the debts of the estate, and in common with other distributees, it would not be as beneficiary of the contracts of insurance but as one entitled by the Intestate Act to a distributive share of her husband's estate, regardless of the source from which it was derived. The court also commented that the law might well be amended so as to cover factual situations such as existed in the proceeding. The legislature did amend the law by the Act of August 5, 1941, P.L. 816, 20 Purdon's Penna. Statutes Annotated § 3441 et seq.

In the case of Koontz v. Messer and Quaker State Oil Refining Co., 320 Pa. 487, 181 A. 792, the plaintiff accompanied her husband on a trip in an automobile driven by her husband on his employer's business. Due to the husband's negligence while acting within the scope of his employment, the wife was injured. The wife sued the husband's employer who brought upon the record as an additional defendant, by a writ of scire facias, the husband of the wife-plaintiff. It was contended that the immunity of the husband, who was not subject to suit by his wife should be extended to the husband's employer. The court held that the personal immunity which protects the husband from suit by his wife is based simply upon a policy of preserving domestic peace and felicity. Further that a trespass, negligent or unlawful, upon the person of the wife does not cease to be an unlawful act. Although the law exempts the husband from liability to the wife for the damage, others may not hide behind the skirts of his immunity. A right of recovery was permitted against the employer of the husband for damages sustained by the wife as a result of the negligence of the husband-employee in the course of his employment; although the defendant by a writ of scire facias brings in the servant-husband as an additional defendant on the ground that the husband is liable over to the original defendant or employer on the cause of action of the wife-plaintiff.

In the case of Fisher v. Diehl, 156 Pa. Super. 476, 40 A.2d 912, an action for trespass was brought by a husband and wife against the owner of a truck to recover damages alleged to have been suffered by them, respectively, as a result of a collision involving the automobile of the husband-plaintiff and driven by him, in which the wife of the plaintiff was a guest passenger. The accident occurred when the plaintiff-husband drove his automobile into the parked vehicle of the defendant. The original defendant claimed that liability existed on the part of the plaintiff-husband and request was made to join the husband as an additional defendant in the action filed by the wife. Allowance was granted permitting said joinder, and a verdict was returned against the defendant truck owner and husband of the wife-plaintiff. The court held that any judgment obtained against the husband, as additional defendant, may not be enforced by the wife-plaintiff, but is only available to the original defendant by way of contribution; that, on payment of the judg-

ment by the original defendant, he is entitled to have it marked to his own use so as he may use it to enforce contribution, if he can, from the additional defendant. It was further held that the action of the court was not equivalent to permit an action by the wife against her husband since her husband is not a party defendant to the action as far as she is concerned. The judgment is not enforceable by her nor does it enure to her benefit. It is simply a judgment enuring to the benefit of the original defendant if he pays or is required to pay the wife's judgment; and it then requires the husband to pay to the original defendant only one-half of the damages paid by the latter as a result of the joint negligence of both. The joining of the husband of the wife-plaintiff as an additional defendant was in the interest of right and justice, and that to have refused to have done so would have been an injustice to the original defendant; and that as no harm or injury resulted therefrom to the plaintiff, the procedure was proper.

The case just cited is similar to the one at bar as far as the joint and concurring negligence of the husband and a third person, bringing about the accident and resulting injuries to the wife. The difference being that in this case the wife died.

In the case of McFadden v. May, 325 Pa. 145, 189 A. 483, a married woman was killed in an automobile collision and the mother instituted an action against the driver of the automobile under the Wrongful Death Statute. The question arose as to whether or not the action could be maintained by the mother due to the fact that the husband had been guilty of desertion. The court held that since the deserted husband was no longer a member of the family group, having by his voluntary act of desertion severed the family relationship, the action could be filed by the mother in the name of the husband. That if there was a recovery, the proceeds could be paid to the court and equitable distribution made among those entitled. This would enable the husband to establish, if it be a fact, that he did not desert his wife and that, therefore, he is entitled to share in the proceeds.

It would appear that since no provision exists in the Survival Statute or the Intestate Act that deprives a husband or surviving spouse from the right to share in his wife's estate, where the fund in the estate is created through the negligent act of the surviving husband or spouse, that this Court should not write into the statutes an exception which the legislature had not seen fit to make. It could be reasoned that under the circumstances which we have in the case for adjudication, it might appear proper for the Court to direct any recovery which might be allowed to be paid into the orphans' court and distribution made in accordance with the Intestate Laws of the Commonwealth of Pennsylvania. In other words, it would be left to the orphans' court to decide whether or not, as a matter of public policy, the husband should be entitled to share in the distribution of the fund of his wife's estate.

There appear, however, to be cases in other jurisdictions in which this problem has been discussed, and there is a wide diversion of opinion as to whether or not a right of recovery should be permitted under circumstances such as we have in the case for adjudication.

The first view is that contributory negligence on the part of the sole next of kin will not defeat an action filed by the surviving spouse as the administrator of his wife's estate where the death of the wife was caused by the joint concurring negligence of the surviving husband and a third person. 23 A.L.R. 681 et seq.; Bastedo v. Fraile, 109 N.J.L. 390, 162 A. 62, 87 A.L.R. 587, 592.

The second view which has been adopted is that the contributory negligence of the sole beneficiary will defeat an action for death whether the action is brought in the name of the beneficiary or in his name as the personal representative of the deceased. The reasoning for such a conclusion is where the surviving spouse through his contributory negligence brings about the death of his wife, it would be inequitable and unjust to permit him to reap the benefits where the suit is terminated in favor of the decedent's estate since the surviving husband would profit from his

own wrong. 87 A.L.R. 590; Davis v. Seaboard Air Line, 136 N.C. 115, 48 S.E. 591, 1 Ann.Cas. 214; Flagstaff v. Gomez, 23 Ariz. 184, 202 P. 401, 23 A.L.R. 661, 670 et seq.

The third view is where the contributory negligence of the husband and a third person brings about the death of his wife, the defense of contributory negligence is available only as against the beneficiaries, heirs or next of kin who contributed to the death of the decedent. In other words, the contributory negligence of one of the beneficiaries or next of kin will not defeat the action as to others who were not guilty of such negligence. To hold otherwise would be generally to cast the entire loss ensuing from the joint fault on one of the culpable parties, and oftentimes upon him who is but little to blame. 87 A.L.R. 592; John J. O'Connor v. Benson Coal Co., 301 Mass. 145, 16 N.E.2d 636; Southern Pacific Co. v. Day, 9 Cir., 38 F. 2d 958; 23 A.L.R. 690 et seq.

The Survival Statute under which this action is filed does not carry any limitations as to the individuals who are entitled to recover, and provides, in substance, that executors or administrators shall have power, either alone or jointly with other plaintiffs, to commence and prosecute all actions which the decedent whom they represent might have commenced and prosecuted if the decedent had survived. 20 Purdon's Penna.Statutes Annotated, § 772, Act June 7, 1917, P.L. 447, § 35(b), Act March 30, 1921, P.L. 55, § 1, Act May 2, 1925, P.L. 442, § 1, Act July 2, 1937, P.L. 2755, § 2.

The Intestate Act in the Commonwealth of Pennsylvania carries no limitations in any way whatsoever as to the right of a surviving spouse to share in the distribution of his wife's estate where he is the sole next of kin and is negligent, either individually or concurrently with a third person, which resulted in his wife's death. This is true even though the concurrent negligent act of the husband with a third person created the basic claim through which funds were realized that became available for distribution in the administration of his wife's estate. Act June 7, 1917, P.L. 429, 20 Purdon's Penna.Statutes Annotated, § 1 et seq.

It would appear inequitable and unjust to permit a husband to profit by his own contributory negligence, and it seems contrary to sound principles and against public policy. However, the right of an executor or administrator to institute an action under the Survival Statute is a creature of the legislature, and it is not the province, responsibility or authority of this Court to determine the application or distribution of the funds realized in said action. To hold otherwise, the Court would be writing or reading into the statutes an exception which the legislature had not seen fit to make.

 Furthermore the action filed under the Survival Statute is the same which the decedent would have been entitled to file had she survived, and the same elements of damage are recoverable. Since no problem of descent or distribution affects the liability of the Roadway Transit Company in any way whatsoever, I believe that under the Survival Statute and Intestate Act in the Commonwealth of Pennsylvania William Charles Barringer as the administrator of his wife's estate, has the right to maintain this action and, therefore, recover. Moore v. Prudential Ins. Co. of America, 342 Pa. 570, 575, 21 A.2d 42; Pezzulli, Appellant, v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659; McFadden v. May, 325 Pa. 145, 189 A. 483; Sidekum, Adm'r v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59.

It is possible that the orphans' court may decide it would be against public policy to permit the husband to share in the distribution of his wife's estate. On the other hand, the orphans' court may decide, in the absence of legislative restriction, no authority exists to deny a husband the right to share in the distribution of said estate regardless of the source from which the fund is secured.

Be that as it may, in the consideration of the question now before this Court, I believe that William Charles Barringer, as administrator of the Estate of Mary Anne Barringer, in his action against the Road-

way Transit Company under the Survival Statute is entitled to recover.

Since I have concluded that a right to recover exists under the Survival Statute, the next question which must be considered is the measure of damages to which the estate is entitled.

Under the Survival Statute, the administrator suing on behalf of decedent's estate is entitled to recover the economic value of the decedent's life as measured by the present worth of her likely earnings during the period of life expectancy. From this amount, however, must be deducted the recovery to which the husband would be entitled under the Wrongful Death Statute which is based on the loss of the services and society of his wife less the probable cost of her maintenance which he would have been compelled to pay, as well as other incidental items that he probably would have given her. Siiedkum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59; Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659.

Furthermore the two actions, the one under the Wrongful Death Statute and the other under the Survival Statute, shall not overlap or result in a duplication of damages, and thereby compel the tortfeasor to pay more than the maximum damage caused by the negligent act. Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659.

In this case the plaintiff's wife was 31 years of age, in excellent health, and at the time of her death was earning in outside employment, as a nurse, the amount of $540.00 per year. She was described as being a good wife and good housekeeper, and she lived in harmonious relation with her husband who was a man near her own age, and who was regularly employed at the General Electric Company in the City of Erie.

When there is testimony as to the age of the deceased, the condition of health, his occupation, wages he received at and before the time of the accident, his habits of life as to his industry, and that the deceased was living with her husband, there is sufficient basis on which a jury can find compensatory damages. Rowles v. Evanuik, 350 Pa. 64, 70, 38 A.2d 255.

Claim was made during the trial for damages alleged to have been sustained as a result of the loss of a child, it being claimed that the deceased was pregnant at the time of her injuries and resulting death. If a right to recover existed for this element of damages, it would go to the Estate of Mary Anne Barringer, deceased. However, this item of damages could not be considered for two reasons: In the first instance no testimony was offered to establish the pregnancy of the deceased wife other than statements made by the wife to her husband, Barringer. A condition of this nature is such that medical testimony should be required for it is common knowledge that many circumstances can arise physically with a woman wherein she believes herself to be in a state of pregnancy, and on medical examination it is found that other causes create the condition other than pregnancy. As a result of which the proof offered in support of this claim is not sufficient in law. In the second instance, where an injury to a married woman results in her miscarriage, her loss in respect to the society and prospective earnings of the child is not to be considered as an element of damages recoverable by her. The loss of the child may be shown as affecting the extent of her personal injury and a recovery by her, or on her behalf for her pain and suffering therefrom or for the impairment of her health. These items, however, are recoverable by her and not by the husband. Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513; 13 Ruling Case Law, Para. 487; Restatement of the Law of Torts, Chapter 42, Para. 869, p. 404.

Since under the facts in this case the deceased died at the time of the accident, there is no measure existing under which any damages could be awarded on said claim.

At the time of the accident the deceased was 31 years of age and was earning $540.00 a year. It is, therefore, necessary to consider the economic value of the dece-

dent's life as measured by the present worth of her likely earnings during the period of her life expectancy, and to deduct therefrom living expenses of the deceased during the period of her life expectancy, and the amount which the husband would have been entitled to recover under the Wrongful Death Statute. The recovery under the Wrongful Death Statute would be limited to the loss of the services of his wife, less the probable cost of her maintenance which the husband would have been compelled to pay, as well as other incidental items that he probably would have given her. Gaydos v. Domabyl, 301 Pa. 523, 152 A. 549; Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659; Siiedkum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59; Restatement of the Law of Torts, Chap. 47, Para. 925(b), Item 3, pp. 638 to 642, inclusive.

The Court has evaluated all circumstances which affect the probable duration of Mrs. Barringer's life. Consideration and thought has been given to her age, sex, prior state of health, nature of daily employment and its perils, manner of living, personal habits, individual characteristics, and all other matters which concern the possible duration of an individual's life. Attention has also been given to the fact that as a person grows older, his activities become more limited and, as a result thereof, his earnings would decrease. DiPietro v. Great Atlantic & Pacific Tea Co., 315 Pa. 209, 173 A. 165.

Since I have stated that I believe a right to recover exists in favor of William Charles Barringer as the administrator of the Estate of Mary Anne Barringer, deceased, under the Survival Statute, and I also find that negligence exists on the part of the Roadway Transit Company, and the negligence of the husband Barringer cannot be imputed to his wife, judgment is entered in favor of the administrator under the Survival Statute and against the Roadway Transit Company in the amount of $3,000.

In deciding whether or not any of the other plaintiffs have a right to recover against either the original defendant or the additional defendant, it is not only advisable but necessary in the first instance to discuss the negligence of either or both of said defendants.

It is not only proper but necessary to consider the liability of William Charles Barringer as the additional defendant in the actions of Barthol Stafford and Margaret Stafford, his wife, for the reason that under the Rules of Civil Procedure promulgated by the Supreme Court in the Commonwealth of Pennsylvania, 12 Purdon's Penna. Statutes Annotated, Appendix, Rule 2252 at seq., it was for the purpose of compelling every interested person to appear and have adjudicated conflicting rights in a single action, and to avoid the multiplicity of suits. This furthermore works out contribution as between joint tort-feasors. Gossard v. Gossard, 319 Pa. 129, 178 A. 837; Maio v. Fahs, 339 Pa. 180, 14 A.2d 105.

As to the defendant Barringer, the Court will find from the testimony that he first observed the truck involved in the first accident, which it was claimed blinded him, when he was a distance of 800 to 1000 feet away from said parked truck. He was driving the automobile at approximately 40 miles an hour and the speed was slackened, at one time or the other after the alleged blindness, to approximately 30 miles an hour. That the condition of his visibility was good; it was a clear night, dark, but there were no clouds or any atmospheric conditions existing which would interfere with or impair his vision; the lights on his motor vehicle were burning and that when he reached a point approximately 50 feet distance from the location of the Roadway Transit tractor-trailer vehicle, he observed said motor vehicle for the first time. That he turned his car suddenly to the left in order to avoid a rear-end collision but due to the conditions existing on the highway, he was unsuccessful in his efforts and, as a result thereof, the accident occurred. That the lights on the motor vehicle which Mr. Barringer was driving illuminated the highway in front of him for a distance of 200 feet.

Under the provisions of the Motor Vehicle Code of the Commonwealth of Pennsylvania, more particularly the Act of May

1, 1929, P.L. 905, Article 8, § 801, its supplements and amendments, 75 Purdon's Penna. Statutes Annotated, § 351 (a), it is provided that "Every vehicle upon a highway within this Commonwealth, during the period from one (1) hour after sunset to one (1) hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred (500) feet ahead, shall be equipped with lighted lamps and illuminating devices, * * *." It is clear that the headlights of the motor vehicle being driven by Barringer did not comply with this provision of law. In addition thereto, he observed the lights, which he claimed blinded him, when he was a distance of 800 to 1000 feet away and it appears to me that if proper lights had been burning on the motor vehicle which he was driving, he would have been able to observe the tractor-trailer truck before he entered the field of blindness. I do not believe that the tractor-trailer truck was equipped with rear lights in accordance with the provisions of law which I will hereinafter discuss. Furthermore Barringer did not operate the motor vehicle in a reasonably cautious and prudent manner nor was he properly observant of the conditions of the highway then and there existing. Also if the tractor-trailer truck of the Roadway Transit Company had been properly equipped with lights and operated in a cautious, capable manner, said accident would not have occurred. I, therefore, believe that Barringer did not have his car under proper control under the circumstances, and as a result thereof was guilty of negligence which contributed to the accident.

The Court will refer to authorities in Pennsylvania which set forth the principles of law which govern the responsibility of Barringer in the operation of said motor vehicle.

In the case of Morin v. Kreidt, 310 Pa. 90, 164 A. 799, it was held that it is the duty of the driver of a motor vehicle at all times to have his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances. The speed of the car and the visibility ahead should be so related to each other that the car should be able, in a sudden emergency, to be stopped within the distance not greater than the visibility.

In the case of Nelson v. Damus Bros. Co., Inc., 340 Pa. 49, 16 A.2d 18, it was held that where a person is temporarily blinded by headlights, without fault on his part, it is a reasonable excuse for said person not seeing a parked car which is left on the highway without lights. To hold that it is negligent to drive past an automobile in a situation where headlights are confronting a driver is practically to say that it is negligent to drive along the highway in the night time at all. In the plaintiff not anticipating the defendant's negligent parking of the car and controlling his own car accordingly, the plaintiff cannot be said as a matter of law to have been negligent. In an action for injuries in which it appears that the plaintiff was injured when the automobile he was driving collided with the defendant's truck, which was parked along the side of the highway and displayed no lights, and the plaintiff's failure to see the truck in time to stop was due to the fact that his vision was affected by the lights of another truck approaching him, the evidence did not establish, as a matter of law, that the plaintiff was contributorily negligent.

In the case of Porfilio v. Aaron, 157 Pa. Super. 513, 43 A.2d 370, it was held that a driver of a motor vehicle is not bound to stop merely because he is blinded by the headlights of another vehicle. In this case the plaintiff was blinded by the lights of an approaching motor vehicle and when she recovered her full vision, the automobile of the defendant appeared in front of her, without lights, a distance of 8 to 10 feet. She tried to stop but the collision occurred. The court further held that it was a question of fact for the jury as to the contributory negligence of the plaintiff and it could not be held under the circumstances, as a matter of law, that she was guilty of contributory negligence.

In the case of Kline v. Moyer and Albert, 325 Pa. 357, 191 A. 43, the defendant Albert had permitted his truck to be parked

on the highway at dusk. The defendant-Moyer was approaching in the same direction and did not observe the parked truck within a sufficient length of time to avoid striking the same. As a result thereof, the defendant Moyer drove his car to the left and struck an automobile coming in the opposite direction. It was held that both the owner of the truck and the car proceeding in the same direction in which the truck was parked were liable. Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an independent act of negligence brings about an accident, the first tort-feasor is relieved of liability because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties.

In the case of Farley v. Ventresco, 307 Pa. 441, 161 A. 534, it was held that although under the provisions of the Motor Vehicle Code of the Commonwealth of Pennsylvania, Section 1002, 75 P.S. § 501, the driver of a vehicle on a public highway must not operate it at a speed greater than will permit him to stop within the assured clear distance ahead, these requirements are not so imperative, however, as to charge the driver with negligence, as a matter of law, where he was temporarily blinded and did not see and stop as a result thereof. However, he must carefully watch so that he can see, if that is reasonably possible, any obstacle in his way, and bring his car to a stop before a collision with said object.

In the case of Buohl v. Lockport Brewing Co., 349 Pa. 377, 37 A.2d 524, the plaintiff was riding as a guest in the motor vehicle which collided with an unlighted tractor-trailer parked on the highway. It was claimed that the accident occurred due to the fact that the driver of the motor vehicle, in which the plaintiff was riding, was blinded by the lights of an approaching vehicle and upon regaining his vision, the unlighted tractor-trailer was approximately 20 to 25 feet ahead. The driver of the motor vehicle swerved his car sharply to the left but the right front corner of his car came in contact with the left rear of the tractor-trailer. It was held that the operator of the motor vehicle is not bound to foresee that another will permit his vehicle to stand on the highway without lights. No fixed rule can be laid down which will determine in every instance the person legally responsible for a rear-end collision on a highway at night between a parked vehicle and one that is moving. Temporary blinding caused by bright lights of an on-coming or parked vehicle may constitute a legally sufficient excuse for failing to stop within the assured clear distance ahead.

In the case of Simrell et ux. v. Eschenbach, 303 Pa. 156, 154 A. 369, the plaintiffs were injured when the motor vehicle in which they were riding collided with a truck parked on a highway, and no rear lights were on the truck. The operator of the car, one of the plaintiffs, was fully familiar with the roadway, the lights had been recently inspected and were in good condition, and the law required him to have such headlights on his motor vehicle as would disclose the condition of the road for a distance of 160 feet. The driver testified that his vision was limited due to a bend in the road as he approached the truck, but it appeared that after the curve had been completed, a clear vision existed for 60 feet. The motor vehicle was being driven at 25 to 30 miles an hour. The Court held that since the plaintiff could only see an object as large as a truck for only 20 feet, which is the distance which he claimed existed when he first observed the truck, that he should have modified his speed accordingly and as a result of which the plaintiff was guilty of such contributory negligence as would bar his right of recovery. The court further held that the parking of the truck at night without rear lights is evidence of negligence and that the negligence of the husband could not be imputed to the wife-plaintiff, so that a right to recover existed as far as the wife of the plaintiff was concerned against the defendant.

In connection with the negligence of the Roadway Transit Company, the Court will find that as the driver of the tractor-trailer truck approached the scene of the first accident, he slackened the speed of the truck to approximately 5 miles an hour, and that he continued to operate said vehicle at said rate of speed for approximately one minute. That congested conditions existed on the highway and this was realized by the driver of the truck involved in the first accident, and it is best exemplified by the fact that one or more fusees had been lighted. Under the circumstances, considering the large size of the truck, its heavy load, and the inattention of the driver to traffic conditions during his conversation with the driver of the truck in the first accident, who was walking beside the truck, it is established in the mind of the Court that negligence and lack of care existed on the part of the driver of the Roadway Transit Company.

The Court will find as a fact that Barringer was not blinded by the light of the truck which was parked on the highway and facing him in the direction in which he was proceeding, and, as a result thereof, the rules of law which have application to an individual driving while in an area of blindness do not have application in this case.

The Court further believes that Barringer was guilty of negligence which contributed to this accident and resulting injuries sustained by all persons who were riding in the automobile driven by him due to the fact that he was not properly observant of the conditions of the highway then and there existing, and that he did not operate said motor vehicle in a cautious and prudent manner under the circumstances. Said accident was caused by the joint concurrent negligence of Barringer and the operator of the tractor-trailer truck of the Roadway Transit Company.

In addition thereto, under the provisions of the Act of May 1, 1929, P.L. 951, Article 8, Section 801, its supplements and amendments, 75 Purdon's Penna. Statutes Annotated, § 351(d), it is provided that "Every motor vehicle, and every trailer or semi-trailer attached to a motor vehicle, and every vehicle which is being drawn at the end of a combination of vehicles, shall carry at the rear a lamp of a type which at the time of its use is approved by the secretary, and which exhibits a red light, plainly visible under normal atmospheric conditions from a distance of five hundred (500) feet to the rear of such vehicle. * * *"

I will find from the testimony that compliance was not made with this provision of law, and if the rear of the truck had been properly lighted and that debris, dirt or other elements which would tend to obscure the illumination of the light or lights that were on the rear-end of the truck had not existed, this accident might have been avoided. The Court will, therefore, find that the failure and neglect to have on the rear of said vehicle a light or lights as provided by law was an act of negligence which contributed or helped to bring about this unfortunate accident. Simrell v. Eschenbach, 303 Pa. 156, 154 A. 369.

Furthermore, under the provisions of the Act of May 1, 1929, P.L. 905, Article 10, § 1002, 75 Purdon's Penna. Statutes Annotated, § 501(a), it is provided that "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

The plaintiffs did not set forth as an act of negligence this particular section of the Motor Vehicle Code, either intentionally or due to the fact that their theory of negligence was based upon the fact that the tractor-trailer truck was parked. However, all testimony introduced by either the plaintiffs or the defendants should be considered.

The Court will find that the operator of said tractor-trailer truck, under

the conditions then and there existing just prior and at the time of the accident, did not drive said motor vehicle at a careful and prudent speed, having due regard for the traffic, surface and width of the highway and the other circumstances then and there existing, and that said acts constituted negligence.

Under the law, the issues of a case are defined by, and confined to, the pleadings, and the question whether the burden of proof rests with the plaintiff or the defendant is determined from the pleadings before the introduction of any evidence. However, where an adversary supplies the necessary proof to establish circumstances upon which a right of recovery can be based, the opposite party litigant upon whom the burden rests is relieved of said burden. New York Life Ins. Co. v. Rogers, 9 Cir., 126 F.2d 784; Otto v. Western Saving Fund Society, 343 Pa. 615, 23 A.2d 462; O'Neill et al. v. Metropolitan Life Insurance Co., 345 Pa. 232, 240, 26 A.2d 898, 142 A.L.R. 735.

In this case if the defendant had rested and not introduced any testimony, the Court would not be considering the act of negligence about which comment has just been made. However, when testimony is introduced by the defendant which tends or does establish negligence on the part of the defendant, it is the duty of the Court to consider all of the testimony in the case, both that offered by the plaintiff and the defendant. If in the defendant's testimony negligence is established on the part of the defendant, even if no other negligence has been established by the plaintiff, a right to recover can rest in favor of the plaintiff if the plaintiff has not been guilty of any contributory negligence. To hold otherwise would definitely be an avoidance of a fair and impartial administration of justice since the Court should consider what the facts were which gave rise to the cause of action, regardless of who introduces those facts in the trial of the cause. The Court will, therefore, find for the additional reason just expressed that the Roadway Transit Company was guilty of negligence in the operation of said motor vehicle at the time of the rear-end collision.

The Court will next consider the claim of Barthol Stafford.

For reasons which are apparent from the previous discussion, the Court will find that both William Charles Barringer and the Roadway Transit Company were guilty of joint concurring negligence which contributed to and brought about the accident, and subsequent injuries to Barthol Stafford.

The Court will further find that Barthol Stafford was not guilty of any contributory negligence which contributed to, caused or brought about the accident and the injuries complained of.

The law is settled that the owner of an automobile is not relieved from the responsibility for its management because with the owner's permission another is acting as driver. There is a presumption that an owner in his car has power to control it, especially where the owner tacitly assents to the manner in which the car is being driven; and is in a position to take control of the vehicle at any moment. Spegele v. Blumfield, 120 Pa.Super. 231, 182 A. 149; Von Cannon v. Philadelphia Transportation Co., 148 Pa.Super. 330, 25 A.2d 584; Bell v. Jacobs, 261 Pa. 204, 104 A. 587; McMahen v. White, 30 Pa.Super. 169; Dranoff et al. v. Railway Express Agency, Inc., D.C., 28 F.Supp. 325; Gourley v. Boyle, 346 Pa. 113, 29 A.2d 523.

However, where the owner of an automobile is seated beside the driver, although the owner could control the manner or method of its operation, if the owner passes actual control to the driver, the negligence of the driver is not imputed to the owner whether the driver and owner were engaged in a joint enterprise or not.

It is only when a driver of an automobile is the servant or agent of the passenger at the time of the negligent act and that act is committed within the scope of the servant's or agent's employment, or when the driver and passenger are business partners and the operation of the motor vehicle is in furtherance of the partnership business, that the negligence of the driver will, from the mere relationship of the parties, be imputable to the passenger.

In all other cases the test is: Did the passenger have a right to a share in the control of the vehicle? Speier v. Ayling,· 158 Pa.Super. 404, 45 A.2d 385; Rodgers v. Saxton, 305 Pa. 479, 158 A. 166, 80 A. L. R. 280; Watkins v. Overland Motor Freight Co., 325 Pa. 312, 313, 188 A. 848.

In the case at bar I believe Stafford gave Barringer full and complete control over the car which amounted in law to the creation of a bailor-bailee relationship. I do not think the bailment terminated upon the bailor (Stafford) sharing with the bailee (Barringer) the use and enjoyment of the subject of the bailment.

■ To establish a joint enterprise, in addition to a common purpose, there must also be evidence which would warrant a finding that such injured person had a right to the control, management or direction of the vehicle. Johnson v. Hetrick, 300 Pa. 225, 150 A. 477; Oestreich v. Zibman, 110 Pa.Super. 457, 169 A. 14; Rodgers v. Saxton, 305 Pa. 479, 158 A. 166, 80 A.L.R. 280.

As far as a guest in an automobile is concerned, silence with regard to the driving is generally golden. Schlossstein v. Bernstein, 293 Pa. 245, 250, 142 A. 324.

■ Furthermore, whether a passenger be the owner or an invited guest in an automobile, said person is responsible for inaction only when the guest knows of the danger or where the evidence is such that, from the nature of the situation itself, it appears that the guest must have realized the peril which existed. Where a plaintiff has no part or control in the management of a motor vehicle, the negligence of the driver may not be imputed to the invited guest who had no opportunity to control him. Frank v. Markley, 315 Pa. 257, 173 A. 186; Blaskey v. Penna. R. Co., 138 Pa. Super. 465, 10 A.2d 891; Kilpatrick v. Philadelphia Rapid Transit Co., 290 Pa. 288, 138 A. 830; Becker v. Saylor, 317 Pa. 573, 177 A. 804; Landy v. Rosenstein, 325 Pa. 209, 188 A. 855.

■ Also the negligence of the driver of an automobile is not imputed to a guest passenger who had no right to share in the control of the vehicle and no opportunity to do so. The fact that a guest in an automobile is asleep while it is being operated does not convict him of contributory negligence as a matter of law. Where a plaintiff testifies that he had no part in the management or control of the car, and further that he was dozing at the time of the accident and for some time prior thereto, the question of his contributory negligence is for the jury to determine. Anstine et al.· v. Pennsylvania Ry. Co., 342 Pa. 423, 20 A. 2d 774; Frank v. Markley, 315 Pa. 257, 173 A. 186;· Oestreich v. Zibman, 110 Pa. Super. 457, 459, 169 A. 14; Kilpatrick v. Philadelphia Rapid Transit Co., 290 Pa. 288, 138 A. 830; Lobert v. Pack, 337 Pa. 103, 9 A.2d 365.

■ I do not believe that fair and sensible men could differ in reaching the conclusion of fact that Stafford had just and reasonable cause to believe that Barringer was more able, qualified, and physically capable to drive the motor vehicle on the return trip from Buffalo. Stafford knew that Barringer was well acquainted with the highway between Buffalo and Erie; that Barringer was in the habit of working at nights and as a result of which drowsiness or lack of sleep would not physically affect Barringer in the same manner that it affected Stafford. Also when the car was placed in control of Barringer, the owner Stafford intended to go to sleep, which he did throughout the trip and was doing at the time of the accident. When Stafford turned the car over to Barringer, it created a bailor-bailee relationship and Stafford did not retain and he had no right to share in the control of the vehicle. In other words, the Court believes that the owner of the car intended to place himself in the capacity of a guest, and since no control was intended to be exercised over the driving or could be exercised due to the fact that the owner was asleep, even though a joint undertaking existed, the negligence of the driver cannot be imputed to the guest. As a result of which, the owner or guest is not chargeable with the negligence of the driver so as to prevent him from holding a stranger or third person liable for an injury negligently inflicted upon him.

Consideration, therefore, must be given as to the amount of recovery which Barthol

Stafford should have against each of said defendants.

█ Barthol Stafford suffered a fracture of the right collar bone, a laceration of the right leg, the nature of the laceration to the leg was of the type that it would be likely to re-open with some slight injury or strain for the reason that the site of the laceration was at the shin bone and was approximately four inches in length and one-half inch in width. He was off work for a period of seven weeks, and for a period of ten weeks from the time of the accident considerable pain, discomfort and inconvenience was caused. His average weekly earnings were $45 at his respective places of employment. His hospital bill was $46; medical attention $78. In addition thereto, his motor vehicle was completely demolished beyond repair, and it was stipulated and agreed that the value of the car at the time of the accident was $500; he received the amount of $170 as junk value, or the net loss amounted to $330 as far as the vehicle was concerned. The special damages which Mr. Stafford, therefore, sustained in his own right amounted to $769.

The Court believes and finds that Barthol Stafford should be compensated for the pain, suffering, inconvenience and condition which he experienced in the amount of $500, or total damages in the amount of $1269.

For reasons which are self-evident when considered in light of what has previously been expressed, Margaret Stafford was not guilty of contributory negligence nor should the negligence of Barringer be imputed to her. As a result thereof a right of recovery exists in her favor against Barringer and Roadway Transit Company.

█ In addition thereto, Barthol Stafford is entitled to recover for the expenses which he was obligated to pay as a result of the injuries sustained by his wife Margaret Stafford, for the loss of his wife's society, services and assistance as a result thereof. To approach this problem, consideration must be given the injuries, disability and resulting expenses incurred as a result of the injuries to Mrs. Stafford.

Mrs. Stafford suffered a fracture of the cervical spine or neck, and also fractures of the upper dorsal spine and fracture of the upper left arm. She was treated on traction in bed by a special type equipment for three weeks. It was necessary for her to wear a long plaster jacket, which included the chin. Her glasses were broken in the accident, and it was necessary for her to remain away from her employment for a period of 17 weeks, her average weekly wages being $35. She remained under the care of her physician for a considerable period of time, and at the time of trial a complete recovery had been effected with the exception of a tenderness in the area of the spine over the third and fourth dorsal vertebrae, which the doctor believed to be of a permanent nature although it was not disabling nor would it in any way affect her earning power. However, as a result of the condition of pain and discomfort in the back, although it is not disabling or has any effect on her earning power, said condition will continue for an indefinite period of time in the future. It further appears that Mrs. Stafford, as a result of the accident, received permanent small marks or scars about the face; a scar on the eyelid of the eye, two small scars on the right cheek bone or on the right cheek, two scars on the left arm between the wrist and elbow, and scars on the back of the right hand.

The expenses which Mr. Stafford incurred as a result of his wife's personal injuries, which would be special damages to him, are as follows:

Medical expenses................ $250.00
Hospital expenses ............... 372.00
Glasses ......................... 19.00
Damages to watch & clothing..... 50.00

Total .................... $691.00

█ Mr. Stafford, therefore, will be entitled to recover $691 as special damages, and for the loss of the society, services and comfort of his wife, the amount of $1,000. So that his total claim as a result of the injuries to his wife will be $1691. To this amount will be added his individual claim for expenses and damages of $1269, which will make his total right of recovery $2960.

In connection with the amount of damages to be awarded in favor of Margaret Stafford, she was away from her work for 17 weeks, which created a financial loss of $510. In addition thereto she experienced severe injuries and was caused to undergo considerable pain and suffering. Although no disabling condition or impairment of earning power now exists, she does experience considerable discomfort and inconvenience in going about her normal way of life. It was impossible for the medical witnesses to testify how long this condition might exist, and it was conjectural as to whether or not surgery might be required in an effort to improve said condition or whether it might become disabling.

I believe and find that Margaret Stafford should be compensated for the pain, suffering, inconvenience and condition which she experienced in the amount of $3500, plus her loss of earnings in the amount of $510, or a total recovery is allowed in the amount of $4010.

My conclusions are as follows:

1. That the plaintiff, William Charles Barringer, is not entitled to recover against the Roadway Transit Company for the personal injuries and damages sustained by him individually for the reason that he was guilty of contributory negligence.

2. That William Charles Barringer is not entitled to recover against the Roadway Transit Company in connection with the action filed under the Wrongful Death Statute in the Commonwealth of Pennsylvania, for either his personal pecuniary loss or for the expenses which it was necessary for him to incur as a result of the injuries and resulting death of his wife for two reasons:

(a) Said action is barred by the statute of limitations.

(b) William Charles Barringer was guilty of contributory negligence.

3. That William Charles Barringer as administrator of the Estate of Mary Anne Barringer, deceased, is entitled to recover against the Roadway Transit Company under the Survival Statute in the Commonwealth of Pennsylvania.

4. That Barthol Stafford is entitled to recover against the Roadway Transit Company, the original defendant, and William Charles Barringer, the additional defendant, both of whom were guilty of joint and concurrent negligence.

5. That Margaret Stafford is entitled to recover against the Roadway Transit Company, the original defendant, and William Charles Barringer, the additional defendant, both of whom were guilty of joint and concurrent negligence.