## Paul Estate

*John A. Palmieri,* for petitioner.

*George W. Lucas,* for heirs.

*Wallover, Barrickman & Scalera,* for guardian.

REED, P. J., September 4, 1962.—The Commonwealth of Pennsylvania, by the Department of Revenue, has filed a petition in the above entitled estate, praying that the guardian of the estate make payment to the Commonwealth of Pennsylvania for the cost of maintenance of the incompetent ward at Farview State Hospital from December 18, 1947, to date of decree, as well as to order payment of future maintenance

costs at the rate of $50 per month, the amount owing to the Commonwealth as of November 16, 1961, being $16,634.31.

At no. 6 December term, 1947, in the court of oyer and terminer of this county, Anthony Paul was indicted on a charge of murder of his wife, Gabrina Paul, who died September 9, 1947. Prior to trial, he was legally determined to be insane (suffering from dementia praecox) and was committed to Farview State Hospital where he was admitted on December 18, 1947, pursuant to order of the oyer and terminer court, by Morgan H. Sohn, Judge, on December 3, 1947, and where he is presently detained subject to his being returned to Beaver County for trial in the event of his recovery.

On June 28, 1948, at no. 305 June term, 1948, in the Court of Common Pleas of Beaver County, Anthony Paul was adjudicated incompetent. On March 19, 1957, the account and proceedings were transferred to the Orphans' Court of Beaver County, at no. 1959 of 1957.

The assets in the possession and control of the guardian consist of land, investments and income cash in excess of $20,000 and is comprised of three funds from which payment of past and future maintenance is demanded.

Fund No. 1 was awarded to the guardian at the audit of the estate of Gabrina Paul (account filed at no. 68 of March term, 1959, Orphans' Court of Beaver County) totaling $788.97, $568.50 thereof being the proceeds of an insurance policy of $1000, less cost of funeral of $431.50 and one-third of the remainder estate, $220.47. This amount was awarded to the guardian "to be retained by said guardian until distribution of the proceeds of the sale of real estate held as tenants by the entireties by the decedent and the said Anthony Paul, and the determination by a court of competent jurisdiction of the relevancy of the Act of August 5,

1941, P. L. 816, known as the Slayer's Act, to such distribution."

Fund No. 2—Proceeds from condemnation of real estate. By deed dated August 31, 1942, and recorded in Deed Book Vol. 496, page 500, in the recorder's office of Beaver County, Anthony Paul and Gabrina Paul, husband and wife, became owners of lot no. 66, in block 16, in the French Point and Village Plan, Fourth Ward, Ambridge, Beaver County, Pennsylvania, also known as 1712 Ohioview Street. This property, except for approximately the rear 12 feet thereof, was condemned for highway purposes by the Commonwealth of Pennsylvania and on May 9, 1960, this court, on petition of the guardian and three adult children of Anthony Paul and Gabrina Paul, approved an offer of settlement with the Commonwealth of Pennsylvania for $10,200. The order of court read as follows:

"And now, to-wit; May 9, 1960 the within petition having been presented, and it appearing to the Court that all parties in interest have joined in the said petition; it further appearing to the Court that the offer of compromise and settlement made by the Department of Highways of the Commonwealth of Pennsylvania in the sum of $10,200.00 is a full, complete and ample settlement for the damages incurred by the condemnation of the real estate described in said petition, it is hereby ordered and directed that the said settlement is approved, and that the Beaver Trust Company, Guardian of Anthony Paul, is authorized to execute, acknowledge and deliver any and all receipts and releases which may be required by the Department of Highways of the Commonwealth of Pennsylvania, and that the said sum of $10,200.00 shall be retained by the Beaver Trust Company, Guardian of Anthony Paul, a weak-minded person, until the determination by a court of competent jurisdiction of

the relevancy of the Act of the General Assembly of the Commonwealth of Pennsylvania, P. L. 816 known as the Slayer's Act, and the right of ownership of said fund and the person or persons to whom the sum shall be distributed, and thereafter said sum to be distributed to the person or persons so determined to be legally entitled thereto."

The net amount so received by the guardian in this settlement was $10,193.25 plus $2,108.62, being one-half the rentals from the real estate, and constitutes the Fund No. 2.

Fund No. 3—$8,303.38, funds of Anthony Paul. This amount, however, being subject to proper allocation of net rentals from the real estate during a period of approximately 12 years, the income therefrom and charges against the real estate. Of this amount, $3,577.85 represents the balance in a savings account, retroactive pay, vacation pay and disability insurance benefits, out of which sum $440.70 had been expended to time of hearing hereon for court costs, allowances, etc., In addition, there is added to this fund each month $85 which the guardian receives from Social Security for disability benefits of the ward.

Liability for the support and maintenance of inmates of state owned hospitals, institutions, etc., is established by statute and common law. See Act of June 1, 1915, P. L. 661, secs. 1 and 3, 71 PS §§1781-1783; Mental Health Act of June 12, 1951, P. L. 533, art. VII, sec. 701 et seq., 50 PS §§1361-1386; Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, art. VI, sec. 644, 50 PS §3644; 24 P. L. Encyc. Mental Health §76 et seq.

That this court has authority to direct payment of any of the assets of the ward's estate, either income or principal, for his support and maintenance is not denied. However, the question we must first de-

cide is the extent of this court's jurisdiction over the three funds now in the guardian's possession. As above noted, funds no. 1 and 2 were awarded to the guardian subject to a determination by a court of competent jurisdiction of the relevancy of the Slayer's Act.

The Slayer's Act of August 5, 1941, P. L. 816, 20 PS §3441 et seq., was passed and is to be construed broadly as provided in section 15 thereof in order to "effect the policy of this State that no person shall be allowed to profit by his own wrong . . ." Section 2 provides that no slayer shall "in any way acquire any property or receive any benefit as the result of the death of the decedent . . ."

The Intestate Act of April 24, 1947, P. L. 80, sec. 6(c), 20 PS §1.6, and the Wills Act of April 24, 1947, P. L. 89, sec. 7(5), 20 PS §180.7, have similar provisions and, as stated in the commission's comment to both of these acts, they are not intended to supplant the provisions of the Slayer's Act, but are included for completeness and to avoid any suggestion of partial repeal of the Slayer's Act. In all of these acts, "slayer" is defined to "mean any person who participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person."

Mr. Philip A. Bregy, in his excellent book on Pennsylvania Intestate, Wills and Estates Acts of 1947 (1949), points out, at page 751 et seq., that under the provisions of the Intestate and Wills Acts, as well as the Slayer's Act, a criminal conviction is no longer necessary in determining questions of forfeiture and suggests that to this extent Tarlo's Estate, 315 Pa. 321, and Hoffman's Estate, 39 D. & C. 208, where the slayer became insane are no longer the law. He also states that it is now clear that the Slayer's Act will apply not only where there has been first or second degree murder but where there has been

voluntary manslaughter committed, for the act applies wherever the killing is unlawful and wilful—though not necessarily with malice. Citing footnote to Moore v. Prudential Insurance Co. of America, 342 Pa. 570, 576.

While section 3 of the act provides that "the slayer shall be deemed to have predeceased the decedent as to property which would have passed from the decedent or his estate to the slayer . . .", problems of jurisdiction and applicablity of the act still remain. Some of these are discussed by President Judge Leroy van Roden, of the Orphans' Court of Delaware County, in Vol. XXII, Pennsylvania Bar Ass'n. Quarterly, No. 1, October 1950, beginning at page 48.

In Sobel v. The National Bank and Trust Company of Erie, 71 D. & C. 321, Judge Burton R. Laub, in a proceedings in common pleas court, points out that the Slayer's Act has reference to proceedings in the civil branch of the courts (see also section 14 of the Act) and held that the word "wilful" as used in defining "slayer" implies an iniquitous designing deed rather than an absence of conscious fault. In that case, Judge Laub decided where a widow, after killing her husband, is adjudged insane and committed to a State institution, it being conceded that she was insane at the time of the assault which resulted in his death, the proceeds of a policy on his life in which she was named as beneficiary could be paid to her guardian despite the provisions of the Slayer's Act.

The orphans' court is a court of limited jurisdiction, exercising only such power as is given by statute, expressly or by necessary implication. To this extent it does have legal and equitable powers required for or incidental to the exercise of its jurisdiction: Hunter, O. C. Commonplace Book (2d ed.) Vol. 4, p. 342 et seq., and cases cited therein.

In the recent case of Freihofer Estate, 405 Pa. 165,

Chief Justice Bell, speaking for the court, said (pp. 167, 168) :

"The jurisdiction of the Orphans' Court is statutory [citing cases] . . . The Orphans' Court is also granted by statute all legal and equitable powers required for or incidental to the exercise of its jurisdiction.

"While it has often been said that the Orphans' Court is a Court of Equity, it is more accurate to say that 'in the exercise of its limited jurisdiction conferred entirely by statute, it applies the rules and principles of equity.' " [citing cases]

Neither the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.101 et seq, nor the Slayer's Act confer jurisdiction in determining whether one who has killed another person is a slayer within the meaning of the act.

We are, therefore, of the opinion that until such time as Anthony Paul has been tried in the oyer and terminer court of this county on the indictment now pending against him or a proceeding has been had in the common pleas court to determine whether he is a slayer within the meaning of the Slayer's Act that the prayer of the petition now being considered cannot be granted.

We find that the three funds now in possession and control of the guardian and constituting funds nos. 1 and 2 are not subject to distribution at this time by any order or decree of this court. Except for that part of fund no. 3, being rentals from the real estate held by decedent, Gabrina Paul and Anthony Paul, as tenants by entireties, the remainder of the assets in the possession and control of the guardian, and being the separate property of Anthony Paul, including moneys received from Social Security disability benefits, may be expended and paid out by the guardian for the past and future maintenance of Anthony Paul. We suggest, however, that the guardian should retain sufficient

funds to meet the necessary administration costs of the guardianship and possible future litigation costs.

For these reasons, no directive order will be made at this time.

Costs to be paid by the estate of Anthony Paul.

### Order

Now, September 4, 1962, it is ordered, adjudged and decreed that the petition of the Commonwealth of Pennsylvania, by John Alan Conte, Esq., attorney for the Department of Justice, acting for and on behalf of the Department of Revenue, be and the same is hereby dismissed.

It is further ordered, adjudged and decreed that the guardian of said Anthony Paul be and it is directed to expend and pay out of all the separate assets and funds of Anthony Paul, including Social Security disability benefits, such amounts as may be reasonably necessary for the past and future maintenance of Anthony Paul, subject, however, to it retaining sufficient funds to meet the necessary administration costs of the guardianship and possible litigation costs.