## Moore, Admrx., *v.* Prudential Insurance Company of America, Appellant.

Argued May 28, 1941. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*A. A. Vosburg,* with him *A. Floyd Vosburg,* for appellant.

*David J. Reedy,* with him *A. C. F. Kenouski,* for appellee.

Opinion by Mr. Justice Stern, June 30, 1941:

Three policies of insurance upon the life of Job .W. Moore were issued by Prudential Insurance Company of America, in each of which his wife, Rosella Moore, was named as beneficiary. The right to change the beneficiary was reserved by the insured; should the

beneficiary not survive the insured, the amount due under the policies was to be paid to the insured's executors, administrators or assigns.

Rosella Moore shot and killed her husband, pleaded guilty to a charge of voluntary manslaughter, and is now serving a sentence for the crime. She brought this suit to recover under the policies, at first in her own right as beneficiary, but, by subsequent amendment, as administratrix of her husband's estate. Defendant filed an affidavit of defense which resisted recovery of additional benefits provided for in the policies if the death was due solely to external, violent and accidental means, the affidavit alleging that in the altercation which led to Moore's death he was the aggressor and therefore his death was not accidental. As to the portion of the claim relating to the ordinary life insurance, defendant asserted its willingness to make payment "to a person who can receive the same without thereby placing the said Rosella Moore in a position to make claim for a part of said insurance, as widow of the insured, and thus allow her to reap indirectly a benefit from her own felonious and wrongful act in killing the insured." The court struck off "new matter" alleged by defendant and made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense as to the face amount of the policies, leaving open for subsequent trial the question of defendant's liability for the accidental death benefits. Defendant appeals.

The "new matter" was properly stricken off. It consisted partly of allegations of law and partly of averments which should have been, and were, included in the body of the affidavit of defense. To such allegations and averments a plaintiff is not obliged to reply: *Philadelphia & Reading Coal & Iron Co. v. Tamaqua Borough School District*, 304 Pa. 489, 495, 156 A. 75, 76; *Wilson & Gardner Co. v. Wilson*, 334 Pa. 289, 292, 5 A. 2d 575, 577.

Instead of passing preliminarily upon the question (not raised by counsel) whether the judgment entered for part of plaintiff's claim, with further proceedings to follow as to the remainder, is interlocutory and therefore not appealable at this time, we prefer to render a decision upon the merits, especially as this controversy was presented to us once before, though in another form, on an appeal by the present defendant *(Prudential Insurance Co. of America v. Moore,* 339 Pa. 13, 14 A. 2d 277).

It is apparently conceded by plaintiff, as shown by her action in amending the capacity in which she seeks recovery, that a beneficiary who has feloniously caused the death of the insured will not be allowed to maintain an action to recover the proceeds of the policy: *Robinson v. Metropolitan Life Insurance Co.,* 69 Pa. Superior Ct. 274; *Greifer's Estate,* 333 Pa. 278, 5 A. 2d 118. Mr. Justice FIELD said in *New York Mutual Life Insurance Co. v. Armstrong,* 117 U. S. 591, 600: "It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired."

Unanimous as are the adjudicated cases[1] in deciding that a beneficiary cannot profit from his own crime by a recovery on the policy, they are practically equally unanimous[2] in holding that the obligation of the insurance company to pay the amount specified in the

[1] See lists compiled in 70 A. L. R. 1539; 91 A. L. R. 1486; L. R. A. 1917 B, 671; 37 C. J. 576, § 341; 29 Am. Jur. 979, § 1310; 2 Couch, Cyc. of Insurance Law 1018, § 342; 6 Cooley's Briefs on Insurance (2d ed.) 5227; 2 Joyce, Law of Insurance (2d ed.) 1826, § 833; Vance on Insurance (2d ed.) 598, § 156; Richards on Law of Insurance (4th ed.) 568, § 335.

[2] See lists compiled in 7 A. L. R. 828; 27 A. L. R. 1521; 70 A. L. R. 1543; 91 A. L. R. 1488; 37 C. J. 576, § 341; 29 Am. Jur. 980, § 1313; 2 Couch, Cyc. of Insurance Law 1019, 1020, § 342; 6 Cooley's Briefs on Insurance (2d ed.) 5229, 5230; 2

contract is not released by the criminal act of the beneficiary, and that payment must be made to the personal representatives of the insured. While public policy dictates that the beneficiary should not be allowed to claim the insurance money, it does not demand that the contract itself be invalidated. The designation of a beneficiary is only an incident of the agreement, especially where, as here, the insured reserves to himself the power to change the beneficiary and thus retains control over the proceeds. If no beneficiary had originally been appointed, or if the beneficiary had died prior to the death of the insured, the proceeds would have gone to the insured's estate, and the same result must follow when the beneficiary, though surviving the insured, has become personally disqualified. It was only her *own* rights in the policies that plaintiff destroyed when she killed the insured. He was the one who contracted with the company, and, having paid all the premiums, he, or his estate upon his death, should not lose the fruits of his contracts merely because the person whom he had designated as the beneficiary incapacitated herself from qualifying in that capacity.

In *Robinson v. Metropolitan Life Insurance Co.,* 69 Pa. Superior Ct. 274 (allocatur refused 69 Pa. Superior Ct. xxxix), the beneficiary of a policy murdered the insured, her husband, and suit was brought against the company by the administrator of the estate of the insured. In sustaining a directed verdict for the plaintiff the court said (pp. 276-278) : "It is conceded that by her act Mrs. Freeney disqualified herself to become a beneficiary and an action by her could not be maintained against the defendant. Is the latter, therefore, relieved from liability to pay to anyone? The contract was made directly with Elmer Freeney. . . . In naming the wife as beneficiary it was manifestly in contem-

---

Joyce, Law of Insurance (2d ed.) 1827, § 833; Vance on Insurance (2d ed.) 599, 600, § 156; Richards on Law of Insurance (4th ed.) 569, 570, § 335.

plation of the parties that she would not only be alive but capable of receiving the benefits of the policy. She voluntarily removed herself from the class of persons entitled to take. . . . In effect, therefore, there was no named beneficiary when the obligation of the company to pay arose. . . . The condition on which payment was to be made has arisen; the . . . beneficiary has ceased to exist, legally speaking; . . . On such a state of facts the fund should be paid to the estate of the decedent." That case correctly states the law and rules the present controversy.

The objection raised by defendant to paying the proceeds to plaintiff as administratrix of her husband's estate is that, upon distribution by the orphans' court, she may obtain, by inheritance, a part of the proceeds and thus profit indirectly from the crime she committed. It is not within the province of defendant, however, to raise that question. No problem of descent and distribution affects its liability as established by the policies. It has nothing to do with the application of the money. The orphans' court is the tribunal to determine, in the light of the decisions in *Carpenter's Estate*, 170 Pa. 203, 32 A. 637, and *Tarlo's Estate*, 315 Pa. 321, 172 A. 139, to whom distribution of the estate of the insured, including the proceeds of these policies, should be made. Defendant suggests that a constructive trust of the proceeds of the policies should be set up in favor of the creditors of the insured and his heirs (consisting of his children by a former wife) but excluding the beneficiary. But as Mr. Justice DREW said in his concurring opinion in *Tarlo's Estate*, supra (page 327): "Without overruling the principle expressed in Carpenter's Estate . . . and doing violence to the statute of descent, the device of a constructive trust cannot be employed." The only theory by which an equitable interest could be declared to exist in the creditors and heirs of the insured would be that the insurance money had become the property of the insured's estate, but on that theory it can be administered

only in the orphans' court and in accordance with the law of the Commonwealth thereto applicable. If plaintiff should receive in that court any part of the proceeds of the policies, after payment of the debts of the estate and in common with other distributees, it would not be as beneficiary of the contracts of insurance, but as one entitled by the Intestate Act to a distributive share of her husband's estate regardless of the source from which it was derived.[3]

Judgment affirmed.

------

[3] Section 23 of the Intestate Act of June 7, 1917, P. L. 429, provides that "No person who shall be finally adjudged guilty, either as principal or accessory, of murder of the first or second degree, shall be entitled to inherit or take any part of the real or personal estate of the person killed, as surviving spouse, heir, or next of kin to such person under the provisions of this act." It will be noted that this does not disinherit a person guilty of voluntary manslaughter. The section might well be amended in that respect so as to cover such a case as the present, and the same observation applies to section 22 of the Wills Act of June 7, 1917, P. L. 403.

"REPORTER'S NOTE"

The suggestion made by the Court in the third footnote to the opinion has since been adopted by the Legislature. Act No. 301 of the Pamphlet Laws of 1941, approved August 5, 1941, provides, in general, that no person who participates either as a principal or as an accessory before the fact in the wilful and unlawful killing of any other person shall in any way acquire any property or receive any benefit as the result of the death of the decedent. As to insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, the Act provides that the proceeds shall be paid to the estate of the decedent unless the policy or certificate designates some person not claiming through the slayer as an alternative beneficiary. The Act further provides that the slayer shall be deemed to have predeceased the decedent as to property which would have passed from the decedent or his estate to the slayer under the statutes of descent and distribution or have been acquired by dower, by courtesy or by statutory right as surviving spouse, or would have passed to the slayer by devise or legacy from the decedent.