# Colyer's Adm'r. v. New York Life Ins. Co.

June 5, 1945.

B. J. Bethurum and Robert Bird for appellant.

Wm. Marshall Bullitt, R. L. Blackwell, and Bullitt & Middleton for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK — Affirming.

On April 10, 1942, Finley Duncan brutally murdered his 20-year-old brother-in-law, Edward Colyer, who had been making his home with Duncan for several years. Duncan sought to establish his innocence by saying that Colyer met his death in an automobile accident. He was sentenced to the penitentiary for his natural life. Duncan v. Commonwealth, 294 Ky. 783, 172 S. W. 2d 665. On March 12, 1942, through Duncan's instigation, a $10,000 accident policy was issued on Colyer's life with Duncan and his wife as beneficiaries. On March 16, Duncan made application for a guarantee reserve life policy on Colyer, paying approximately $1,000 travel and $700 auto death benefits, with Duncan as beneficiary. The policy was issued the following April 1. On March 22, Duncan phoned the appellee's Cincinnati office and said that he wanted to discuss insurance on Colyer's

life. He was told that on two previous occasions some one claiming to be Colyer had made appointments which had not been kept. He guaranteed that Colyer would keep the appointment, but met the agent himself and furnished him the information needed to fill out the application. In this application he stated that Colyer was not married, though he had a wife living in Tennessee. Duncan specified that he should be named beneficiary in the $2,000 double indemnity policy. On the same day he made application for the same type of policy for himself. When Colyer's application was filled out Duncan carried it to him and secured his signature thereto. Duncan paid both premiums with his own check. On April 6, the policies were issued. On April 8, Duncan called at the Company's office and secured the policies and took them to his home and placed them under a mattress. On April 9, Duncan and Colyer left Cincinnati and went to Chattanooga, according to the former's statement. Duncan's testimony as to how Colyer met his death was of an unsatisfactory and contradictory nature. See Duncan v. Commonwealth, supra.

This action was instituted by the administrator of Colyer's estate to recover on the policy issued by the New York Life Insurance Company. Both Duncan and his wife, the contingent beneficiary, were made parties to this action, but neither filed any answer or made claim to the proceeds of the policy. Of course the wife could not recover because the contingency never happened, and the case of National Life Ins. Co. v. Hood's Adm'r, 264 Ky. 516, 94 S. W. 2d 1022, would preclude a recovery on Duncan's part. That case holds that a beneficiary may not recover insurance when he feloniously kills the insured.

The question presented on this appeal is, May Colyer's estate collect the proceeds of the policy?

In urging reversal the appellant relies upon the Hood case. He insists that the court erred in giving the following instruction to the jury:

## "II

"The Court instructs the jury that on April 10, 1942, Finley Duncan, referred to in the evidence herein, did wilfully, feloniously and with malice aforethought, slay, kill and murder Edward Colyer, who is the person named as the insured in the policy sued on herein.

'The Court further instructs the jury that if it shall believe from the evidence that the said Finley Duncan procured Edward Colyer to make application for such policy, or to pay the premium thereon, or to designate the said Finley Duncan as beneficiary thereof, and that at the time said policy was applied for or was issued, or was delivered or the premium thereon was paid, the said Finley Duncan had already determined to slay, kill and murder the said Edward Colyer, then the jury will return a verdict for the defendant, New York Life Insurance Company.''

It is his contention that the evidence did not warrant the instruction. In support of this he refers to the agent's statement that "This originally was instigated by a letter received in New York from Edward Colyer." He points out that Colyer signed the application, the military and naval blanks and examination form; and that Colyer had previously made application to the Company at its Chattanooga office and sent a money order for payment of a quarterly premium. It is true that Duncan had in his possession a money order purportedly made out to the Company by Colyer and also that Colyer, or some one in his stead, contacted the Chattanooga and New York offices of the Company. In so far as the money order is concerned, it was applied on the second premium of Duncan's policy, and the subject did not come up between him and the agent until five days after Duncan had already paid the premium on Colyer's policy. In view of what has been said heretofore, there is strong indication that Duncan took the original steps in the procurement of the policy, but, even if it be assumed that Colyer himself took those steps, the record overwhelmingly supports the conclusion that it was Duncan rather than Colyer who actually procured the policy. It could be argued with force that the evidence in support of the appellant's contention constitutes little more than a scintilla, since it is so greatly preponderated by the evidence for the Company, but, at least, the question was one for the jury.

We find no error in the instruction toward which complaint is directed. The Hood case is clearly distinguishable. In that case, and those of like tenor, and there are many (See Annotations 70 A. L. R. 1539 and 91 A. L. R. 1488), it was held that, where the beneficiary

unlawfully kills the insured, he forfeits his right to recover under the policy, and a right to sue arises in favor of the estate of the insured just as if no beneficiary had been named in the policy; but those decisions are based upon a valid insurance contract and involve situations where the intent or purpose of the beneficiary to do away with the insured arose after the issuance of the policy. In the case at bar it is clearly established that there was a predetermination on the part of Duncan, before the policy was issued, to kill Colyer. Under such a circumstance there can be no recovery, either on the part of the beneficiary or the estate of the insured, because the contract of insurance was void from its inception. In fact there was no contract of insurance between Colyer and the Company. While this precise question seems not to have been before this Court heretofore, there is ample authority to support the statements just made. 29 Am. Jur., Insurance, Section 1313, and the Annotation to the case of Smith v. Todd, 155 S. C. 323, 152 S. E. 506, 70 A. L. R. 1529. One of the leading cases on the subject is New York Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 S. Ct. 877, 29 L. Ed. 997. That case is referred to in the American Jurisprudence citation and in the Annotation in 70 A. L. R. The Armstrong decision also holds that evidence as to the procurement of other policies by the beneficiary at or about the same time is admissible.

The conclusions just stated seem to us to be inescapable when it is considered that, at or about the time Duncan was negotiating with the Company relative to a policy on Colyer's life, he secured two other accident policies on Colyer with himself as beneficiary; that he wanted a double indemnity policy; and that only two days after the policy in question was issued he brought about Colyer's death through an alleged automobile accident. As a matter of fact, reference to the case of Duncan v. Commonwealth, supra, will show that Duncan knocked Colyer in the head; tied his legs together; placed him on the floor back of the front seat of the car; set the car on fire; and caused it to run over a 200-foot embankment.

Under the circumstances, we think the judgment should be and it is affirmed.