BURNS

v.

GOLDBERG et al. (MALAMUT, third party defendant).

Appeal of MALAMUT.

Appeal of GOLDBERG et al.

Nos. 11122, 11123.

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1953.

Decided Feb. 24, 1954.

Lynne L. Detweiler, Philadelphia, Pa. (Swartz, Campbell & Henry, Philadelphia, Pa., on the brief), for Malamut.

Henry T. Reath, Philadelphia, Pa. (John B. Martin, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for Goldberg et al.

B. Nathaniel Richter, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The fatal injury of a Philadelphia housewife in a traffic accident in that city is the basis of this suit wherein decedent's administratrix asserts claims under the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act.[1] The litigation is in federal court solely under diversity jurisdiction and it is clear and undisputed that all controverted issues are ruled by the law of Pennsylvania.

The decedent, Lillian Malamut, was fatally injured in a collision of an automobile driven by her husband with another automobile owned by the defendant partners Goldberg. The decedent was survived by her husband and two infant children. Their pecuniary loss, recoverable under the Wrongful Death Act, and the decedent's own loss, upon which her estate's recovery under the Survival Act is predicated, are the distinct bases of the claims which the administratrix of the decedent makes against the Goldbergs in this suit. The Goldbergs in turn brought the surviving husband, Meyer Malamut, into the litigation as a third party defendant.

Upon trial a jury verdict established the negligence of both the Goldbergs and the husband and awarded the administratrix $15,000 damages under the Wrongful Death Act and $5,000 under the Survival Act. Judgment for the plaintiff in these amounts was entered against the Goldbergs with judgment over for half of each award in favor of the

---

1. The basic provisions of the Pennsylvania Wrongful Death Act go back to 1855. Section 1 of P.L. 309 of April 26, 1855, 12 P.S. §§ 1601, 1602. This enactment created a distinct statutory cause of action for the pecuniary loss which a death by violence or negligence might impose upon a surviving spouse, children and parents of the decedent. Quite different is the Survival Act of 1937. Section 2 of P.L. 2755 of July 2, 1937, 20 P.S. Ch. 3 Appendix, § 772. It provides for a true survival action in that it enables the personal representative to institute for the estate after the decedent's death an action to recover what are essentially the decedent's damages from his negligent injury and consequent death.

Goldbergs against Meyer Malamut. Thereupon, the defendants moved to set aside the judgments and to reduce each award by one-third on the theory that one-third of each award to the administratrix represented the interest of the surviving husband who should be barred from any recovery because of his own negligence. The Goldbergs also moved for judgment n.o.v. on the theory that there had been no proof that their vehicle was being used in partnership business at the time of the accident. These motions were overruled and on appeal we are asked to review the issues they raised.

The first and principal question concerns the effect of the husband's negligence upon the allowable damages. In this regard it is important to see just how the matter was submitted to the jury.

■■■ First, the trial judge in his charge explained to the jury in some detail the two distinct claims in suit, saying:

"Where a death is caused by negligence, two actions may be brought after death: (1) a 'death action' which under statute is for the benefit of enumerated relatives, such as the husband and children in this case and such action is measured by the pecuniary loss sustained by them; and (2) a 'survival action,' a right which continues after death in the decedent's personal representative. The damages recovered in such action are measured by the pecuniary loss to decedent and therefore accrue to her estate."

This clear and correct summary statement was amplified in some detail. In addition, the court stated the distinct elements of damage as follows:

"This is what constitutes the total measure of loss:

"(a) The present value of the loss of services that would have been rendered by decedent but for this accident, to her family;

"(b) An award for conscious pain and suffering;

"(c) An award for medicines and medical bills occasioned by reason of the accident;

"(d) An award for the funeral bill. * * *

"What I have put under (a) will be your award under the Act of 1855, and it would, obviously, be the larger loss by far. (b), (c) and (d) added together would be your verdict under the Survival Act of 1937, as amended in 1949."

The Court explained further that the family consisted of the husband and the two children and instructed the jury how to go about determining the pecuniary loss of each member of the family. Immediately thereafter the court charged that "under the 'death action' for loss of services in the case of Mr. Malamut, there can be no recovery for loss of such services if you find his negligence * * * [was] a contributing cause of the accident."

We have spelled out these portions of the charge because they so explicitly describe the separate elements of the verdict and instruct the jury to eliminate the husband's loss from the wrongful death award if he was contributorily negligent. It is equally clear that the jury was not told to make any similar diminution of the survival award.

■■■ But appellants contend that other things were said and done which so confused the jurors that we cannot fairly conclude that the wrongful death award as actually made by the jury eliminated the husband's loss. This contention is based partly upon the fact that at several places in the charge the court talked about the loss of, or the award to the "family", or to the "husband and children". And special complaint is made that at the conclusion of the charge the court propounded the question, "If you do find for the plaintiff * * * [state] what amount you award the family of Lillian Malamut." The burden of

defendants' contention as we understand it is that having once told the jury under what circumstances the husband's loss must be excluded from the calculation of the loss of the family group, the court did not repeat this explanation as qualifying other references to the aggregate claim of the family group. Such repetition, particularly at the end of the charge when the question last quoted above was propounded, might have been desirable. But the defendants' counsel did not ask for it. It must have seemed to counsel then that the circumstances of the husband's exclusion had been clearly enough explained so that repetition was not essential. And so it appears to us now.

But this does not quite end the matter. After the jury retired it returned to ask the court this question: "If we decide both parties are equally responsible for the accident, how do we dispose of the second suit?" The court, reasonably understanding this query to reflect uncertainty whether there should be a separate verdict on the third party claim, answered as follows:

> "If you decide that both parties are equally responsible for the accident your verdict should be for the plaintiff against all defendants, and you mention the amount. That is all you have to do. The rest of it will be taken care of in another way that we lawyers all understand and you don't have to bother with that. I could tell you about it but you don't have to worry about that."

Thus instructed the jury retired and returned with a single lump sum verdict of $20,000 against all defendants. The court then sent the jury out again to allocate this sum between the death and survival claims. The jury did this and made its verdict $15,000 under the Wrongful Death Act and $5,000 under the Survival Act.

The defendants now say that when the jury improperly returned a single lump sum verdict it may not only have lumped death and survival claims together but may also have included a wrongful death award for the husband's loss. We think such speculation is unwarranted. While the court's proper answer to the jury's question about disposition of "the second suit" seems to have been misinterpreted as an authorization to aggregate the death and survival awards in one verdict, we find no basis for believing that the jury was further confused as to the proper components of the death award itself. Nothing happened to disturb or invalidate the normal assumption that the jury followed the court's instructions in this regard.

Apart from these questions of how the jury actually calculated damages, all parties seem to accept as a correct statement of Pennsylvania law the court's charge, made without objection, that recovery under the wrongful death statute cannot include any award for the pecuniary loss of the surviving husband whose negligence contributed to his wife's fatal injury. This principle is thought to be the underlying assumption of Minkin v. Minkin, 336 Pa. 49, 7 A.2d 461. Certainly it is the basis of decision in the elaborate opinion of the district court in Stafford v. Roadway Transit Co., W.D.Pa.1947, 70 F. Supp. 555, reversed on other grounds, 3 Cir., 1948, 165 F.2d 920. But the defendants go further and argue that there should be a similar diminution of the estate's normal recovery under the Survival Act with a view to denying the husband a distributive share in any accession to the net estate of his deceased wife which has resulted in part from his own wrong. This extreme contention is countered by an argument of the plaintiffs, going to the opposite extreme, that the survival recovery, far from being diminished on account of the husband's negligence, should actually be increased by whatever is taken away from the wrongful death recovery by reason of the husband's disqualification from participation in that recovery.

[5] Neither of these extreme positions is well taken in our view of the statutes. Both the history and judicial analysis of the Pennsylvania wrongful death and survival statutes emphasize the separate and mutually exclusive character of the claims these distinct enactments sanction. Murray v. Philadelphia Transportation Co., 1948, 359 Pa. 69, 58 A.2d 323; Ferne v. Chadderton, 1949, 363 Pa. 191, 69 A.2d 104; Stegner v. Fenton, 1945, 351 Pa. 292, 40 A.2d 473. As early as 1855 the Pennsylvania legislature gave a limited group of close, and ordinarily in some degree dependent, relatives in their own right a legal claim for what they had lost through the negligently caused death of their kinsman. Then and for a long time thereafter the decedent's own loss afforded no basis of recovery unless suit had been begun by him during his lifetime. It was not until 1937 that a survival statute gave the personal representative a distinct action on behalf of the estate measured by the decedent's loss. We think this new survival recovery is so unlike the old wrongful death recovery that a loss suffered by a member of the immediate family group cannot be shifted over to the survival action as an element of the quite different claim there. We view as entirely unsound the suggestion that the uncollectibility of all or part of the wrongful death claim because of the running of the statute of limitations or the disqualification of a party can add anything to the survival claim. See the analysis of Chief Judge Gourley in First Nat. Bank in Greensburg v. M. & G. Convoy, Inc., D.C.W.D. Pa.1952, 106 F.Supp. 261. Any such exclusion from the wrongful death recovery is a matter of no legitimate concern of creditors of the decedent or those to whom his net estate may pass by testament or intestate succession. For by hypothesis, that which would have been expended on maintenance and support of the immediate family, would not have gone to creditors or accumulated to swell any future inheritance.

In sum, we see no reason why any non-recoverable loss of the husband which diminishes the wrongful death recovery in this case should go to increase the survival action recovery.

It does not follow, however, that the normal survival recovery itself should be reduced in any way because part of it may ultimately pass to the negligent husband through operation of the laws of succession. It is the invasion of the interest of the decedent which finds redress in this action. Hence damages are viewed and measured in terms of loss suffered by the decedent. The survival of such an action finds primary justification in the protection it affords creditors. It also serves to some degree as a means of assuring that the distributable estate shall include some present value in lieu of what the deceased might have been expected to accumulate during a normal lifetime. Thus, the policy underlying such a recovery does not yield any implication concerning either the eligibility or the disqualification of anyone as a participant in the ultimate distribution of the net estate. Indeed, any such question is premature in the survival action. The appropriate forum is the Orphans Court at whatever time the matter of distribution of the decedent's estate shall be in issue. Cf. Moore v. Prudential Ins. Co., 1941, 342 Pa. 570, 21 A.2d 42; Pantazis v. Fidelity & Deposit Co., 1952, 369 Pa. 221, 85 A.2d 421.

Our conclusion is that the husband's negligence does not in any way reduce the recovery of the administratrix in the survival action. It has been urged that a contrary statement appears in a footnote to our opinion in Smith v. Philadelphia Transportation Co., 1949, 173 F.2d 721, 724, n. 1. But we do not and the bar should not regard any such incidental mention of a collateral matter not in controversy or issue as an authoritative expression of the court's views.

Finally, the Goldbergs contend that the evidence was insufficient to go

to the jury on the question whether their car was being used in the course of their business at the time of the accident. On the record we think this was a jury question and that the jury verdict against the defendants should stand.

The judgment will be affirmed.