ESTATE OF HARRY E. DRAPER, DECEASED, A. FREDERICK RICHARD AND JOHN T. PRATT III, EXECUTORS, AND ESTATE OF ELIZABETH C. DRAPER, DECEASED, CHARLES W. DOWNER AND A. FREDERICK RICHARD, ADMINISTRATORS WITH WILL ANNEXED, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6161–73, 6162–73.    Filed April 9, 1975.

*Evan Y. Semerjian,* for the petitioners.
*Barry J. Laterman,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined deficiencies in petitioners' Federal estate tax as follows:

| Petitioner | Amount |
| --- | --- |
| Estate of Harry E. Draper, et al._____ | $37,205.39 |
| Estate of Elizabeth C. Draper, et al. _____ | 58,272.92 |

The parties have settled all issues except whether the proceeds, a total of $78,345.68, of two insurance policies on the life of Elizabeth C. Draper, are includable in either estate.[1]

This case was submitted under Rule 122 of the Tax Court Rules without trial. All facts were stipulated and are so found. We shall summarize them here.

At the time the petitions herein were filed, the executors of the Estate of Harry E. Draper (Harry) and the administrators with will attached of the Estate of Elizabeth C. Draper (Elizabeth) had their principal offices in Boston, Mass.

The two decedents were husband and wife. Elizabeth B. Draper, Harriette D. Downer, and Alice P. Draper are their daughters.

On or about February 24, 1955, Harry purchased from the John Hancock Mutual Life Insurance Co. (John Hancock) two insurance policies, each in the face amount of $50,000, on Elizabeth's life. Harry designated himself beneficiary, paid all premiums, and retained all incidents of ownership. Specifically stricken from both policies were printed clauses providing for payment to the "executors or the administrators of the Insured"

---

[1] See discussion at the end of this opinion with reference to a possible second issue involving certain tangible personal property having a reported value of $33,240.50 in Elizabeth's estate and a reported value of $29,914.50 in Harry's estate.

if no beneficiary were living at the insured's death, and typed language was substituted requiring payment in that case to the policy "Owner and Holder."

On June 15, 1969, Harry feloniously shot and killed Elizabeth and then shot himself. Harry's motive is not reflected in the instant record. Harry died on July 10, 1969, from his self-inflicted wounds.

At Elizabeth's death, the life insurance policies had a total net face value of $78,345.68.

In his will, Harry bequeathed his nonbusiness tangible personal property to his wife or children with certain conditions not relevant here. The residue of the estate was to be paid to "the Trustees of the HARRY E. DRAPER INSURANCE TRUST." Neither the trust instrument nor its terms were introduced into evidence.

Elizabeth's will devised: (1) Her jewelry, clothes, and "other articles of personal use or ornament" to her daughters; (2) her remaining tangible personal property to Harry; and (3) the residue to a trust for the following purposes:

1. To invest and reinvest the same and to pay the net income thereof not less frequently than quarterly to my said husband during his life.

2. On his death or if he should die before me on my death, to divide the balance of said residue into as many equal shares as there shall be children of mine then living, or deceased children of mine leaving issue then living, and pay one of said shares to each such living child of mine and one of such shares *per stirpes* to the issue of each deceased child. Provided, however, that as to the share of either of my children who may be under thirty (30) years of age at the death of the survivor of myself and my said husband, my trustees shall continue to hold the same in trust and pay the net income only to such child and upon her attaining the age of thirty (30), pay over the principal to her free of trust. The share of a child which is being so held in trust, shall upon her death prior to attaining the age of thirty (30), be paid to her issue *per stirpes* and in default of such issue to my then living issue *per stirpes*.

The Federal estate tax return for Harry's estate, filed in October 1970, showed the insurance policies in question as part of the estate, but listed them as of "uncertain" value because "Insurer challenging payment due to circumstances of insured's death."

The Federal estate tax return for Elizabeth's estate, filed in September 1970, disclosed the existence of the policies but did not include them in the estate or state a value for them, noting that "all incidents of ownership * * * belonged to decedent's

husband" and that "insurer is challenging payment due to circumstances of decedent's death."

On June 6, 1972, the executors of Harry's estate filed a petition in the Essex County, Mass., Probate Court seeking a decree declaring to whom and in what amounts the proceeds of the life insurance policies were payable. The petition alleged in part:

That following the death of Harry E. Draper your Petitioners filed a proof of claim requesting of the Company that the aforesaid insurance proceeds be paid to them as the legal representatives of the Estate of Harry E. Draper, the deceased beneficiary, and that the proceeds have not been paid to your Petitioners because the Company requires that general releases and an indemnity agreement be signed by all parties in interest running in favor of the Company since it is the position of the Company that the circumstances surrounding the death of Elizabeth C. Draper are such that the doctrine set forth in the case of *Slocum v. Metropolitan Life Insurance Company,* 245 Mass. 565, is applicable and that your Petitioners may be estopped from receiving the aforesaid insurance proceeds, and that therefore Elizabeth B. Draper, Harriet [sic] D. Downer and Alice P. Draper, the children of Elizabeth C. Draper, may be entitled to receive said insurance proceeds * * *

Named respondents to the petition included the administrators of Elizabeth's estate, John Hancock, and "William A. Williams, District Director of the Internal Revenue," as well as the Draper children.

In response, John Hancock filed an "Answer By Way of Interpleader" in which it stated in part:

This respondent admits that it received a Proof of Death form signed by petitioner * * * requesting that the proceeds of the aforesaid insurance policies be paid to the Estate of Harry E. Draper and this respondent admits that it has not paid the proceeds of the policies in response to the aforesaid request, and that this respondent insisted that releases be executed by all parties in interest before it would pay the insurance proceeds to one or more of the parties in interest; and this respondent further admits that Elizabeth B. Draper, Harriette D. Downer, and Alice P. Draper are the only and surviving children of Harry E. Draper and Elizabeth C. Draper and that those three children may be entitled to the aforesaid insurance proceeds because the circumstances of Elizabeth C. Draper's death possibly were such that the rule of law set forth in *Slocum v. Metropolitan Life Insurance Co.* 245 Mass. 565 would bar any recovery of the insurance proceeds by the Estate of Harry E. Draper * * *

* * * this respondent cannot, without hazard to itself, undertake to decide as to the validity or the superiority of the respective claims and is unwilling to take the risk of so deciding and subjecting itself to multiple liability on account of one obligation * * *

The children of Harry and Elizabeth appeared as opposing parties in interest and claimed that they were entitled to the insurance proceeds rather than anyone else:

the circumstances surrounding the death of Elizabeth C. Draper are such that the Executors of the Will of Harry E. Draper are estopped from receiving the proceeds of the insurance policies referred to in paragraph 3 of the petition by virtue of the doctrine set forth in the case of *Slocum v. Metropolitan Life Insurance Company,* 245 Mass. 565.

\* \* \*

\* \* \* by virtue of the application of the doctrine set forth in the *Slocum* case the proceeds of the aforesaid insurance policies are not payable to the estate of Elizabeth C. Draper by reason of the fact that Harry E. Draper who survived Elizabeth C. Draper was a beneficiary of a trust under her will into which the insurance proceeds normally would have flowed.

\* \* \* by extension of the application of the doctrine set forth in the *Slocum* case, only your Respondents are entitled to receive the proceeds of the aforesaid insurance policies.

On January 26, 1973, the Essex County Probate Court entered a decree providing:

that as a result of his having feloniously taken the life of Elizabeth C. Draper, Harry E. Draper and his estate are estopped from receiving the proceeds of the John Hancock Life Insurance policies \* \* \* [at issue here]; that the Estate of the late Elizabeth C. Draper has no interest in the aforesaid insurance proceeds, she merely being the insured and not the owner of said policies \* \* \*

The court also decreed, "in the exercise of its equity powers," that the proceeds of the policies—

be distributed as follows:

A. One-third (⅓) to Elizabeth B. Draper, daughter of Elizabeth C. Draper.

B. One-third (⅓) to Harriette D. Downer, daughter of Elizabeth C. Draper, provided however that until said Harriette D. Downer attains the age of thirty (30) years she shall only have the use of the income of said fund and that upon attaining the age of thirty (30) years said fund shall vest in her free of any and all restrictions and provided further that should said Harriette D. Downer die before the age of thirty (30) survived by issue, the balance of said fund shall be distributed to her then living issue by right of representation, and provided further that should Harriette D. Downer die before attaining the age of thirty (30) without surviving issue, said fund shall be distributed to the then living issue of Elizabeth C. Draper by right of representation free of any and all restrictions.

C. One-third (⅓) to Alice P. Draper, daughter of Elizabeth C. Draper, provided however that until said Alice P. Draper attains the age of thirty (30) years she shall only have the use of the income of said fund and that upon attaining the age of thirty (30) years said fund shall vest in her free of any and all restrictions and provided further that should said Alice P. Draper die before the age of thirty (30) survived by issue, the balance of said fund shall be dis-

tributed to her then living issue by right of representation, and provided further that should Alice P. Draper die before attaining the age of thirty (30) without surviving issue, said fund shall be distributed to the then living issue of Elizabeth C. Draper by right of representation free of any and all restrictions.

The insurance policy proceeds, $78,345.68, were subsequently paid in accordance with the terms of the above decree and not directly to the estate of either Harry or Elizabeth.

On May 15, 1973, respondent issued notices of deficiency to both of the estates at bar, including in each estate the full insurance policy proceeds of $78,345.68. The notice to Harry's estate "determined that the fair market value of the proceeds of the insurance policies on the life of the decedent's wife, on which the decedent held incidents of ownerships [sic] would be included in the gross estate." The notice to Elizabeth's estate not only "determined that the net value of the above insurance policies is includible in the gross estate" but also disallowed the marital deduction claimed by the estate, stating:

It is determined that, because the surviving spouse was deemed to have caused the decedent's death "feloniously[,]" public policy would not allow a benefit to flow to the perpetrator of such an act. Consequently, there can be no marital deduction and the taxable estate is increased * * *

The net proceeds of the insurance policies here in question on the life of Elizabeth C. Draper are includable in the Estate of Harry E. Draper for Federal estate tax purposes and not in the Estate of Elizabeth C. Draper.

Petitioners argue that the life insurance proceeds should not be included in either of the estates before the Court. Citing *Slocum v. Metropolitan Life Ins. Co.,* 245 Mass. 565, 139 N.E. 816 (1923), for the proposition that "[it] would be contrary to public policy to permit a beneficiary who has feloniously taken the life of the insured to recover on the policy," they argue that the proceeds would not be includable in Harry Draper's estate under Massachusetts law and, therefore, should not be taxed in that estate under section 2033, I.R.C. 1954.[2] Petitioners also assert that the proceeds in question are not taxable in Elizabeth Draper's estate because under the terms of the insurance contract, the proceeds were not payable to or for the benefit of

---

[2] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.
The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

the estate, nor did Elizabeth Draper possess any incidents of ownership regarding the policies within the meaning of section 20.2042–1(c), Estate Tax Regs.; therefore, say petitioners, section 2042 would not require inclusion of the proceeds in Elizabeth Draper's estate. Petitioners apparently reach the overall conclusion that on the facts at bar the insurer's obligation under the insurance contract was canceled so that neither estate had any claim to the proceeds, relying on Restatement, Restitution, sec. 189(1), comment (e)(3), p. 778 (1937):

Where no one except the beneficiary or one claiming through him has any interest in the policy, and the beneficiary murders the insured, the insurer is under no liability on the policy. If the policy is taken out by the beneficiary, and the beneficiary at the time when he takes out the policy does not intend to murder the insured, but he later murders the insured, the insurer is under no liability upon the policy. In such a case it is against public policy to permit the beneficiary to profit by the murder, but there is no reason why the estate of the insured should be entitled to the proceeds.[3]

On brief respondent seems to argue that the insurance proceeds may be taxable in both estates, but we believe the essence of his position is that the insurance proceeds must be taxed in one estate or the other, if not in Harry's then certainly in Elizabeth's. Respondent attempts to distinguish *Slocum* insofar as it would bar inclusion of the proceeds in Harry's estate, but relies on that case for the proposition that where a beneficiary is barred from recovery because he killed the insured, the policy proceeds are payable to the insured's estate.[4]

We agree with petitioners that the Estate of Elizabeth C. Draper had no interest in the insurance proceeds and that the latter are not includable in her estate. Whether the estate had a legal interest in or right to the policies' proceeds is to be determined by State law. See *Aquilino v. United States*, 363 U.S. 509, 512–513 (1960). We accord "proper regard," *Commissioner v.*

---

[3] If petitioners' argument that the insurer's obligations under the insurance contracts were canceled is correct, it might follow that the amounts paid by the insurer to the decedent's children would be includable in their ordinary income for Federal income tax purposes. Such amounts would not be paid "under a life insurance contract," because the contracts had been voided, and so would not qualify for exclusion under sec. 101, I.R.C. 1954. It also appears unlikely that the payments could be shown to have proceeded from a "detached and disinterested generosity," *Commissioner v. Duberstein*, 363 U.S. 278, 285 (1960), which is the hallmark of a gift for Federal income tax purposes.

[4] Respondent has not argued that if the insurer's obligation is considered canceled, and the proceeds therefor are includable in neither estate, that Harry Draper's estate was nonetheless entitled to the cash surrender value of the policies or to a refund of the premiums paid. Cf. Restatement, Restitution, sec. 189(1), comment (e)(3), p. 778 (1937).

*Estate of Bosch,* 387 U.S. 456, 465 (1967), to the decree of the State Probate Court that Elizabeth's estate has "no interest" in the proceeds. We also note that Harry Draper was the owner as well as the sole beneficiary under the policy; that Elizabeth had no rights whatsoever under the policy; and that, having predeceased Harry, Elizabeth could have acquired no interest in the proceeds under Harry's will or intestate succession statutes. We conclude that the Supreme Court of Massachusetts, if presented with the facts and circumstances of this case, would agree with the Probate Court that Elizabeth's estate had no interest in the proceeds of these policies.

Respondent cites *Slocum v. Metropolitan Life Ins. Co., supra,* to the effect that where an insured is feloniously killed by the beneficiary, the insured's estate is entitled to the proceeds. In *Slocum,* however, the insured did possess an interest in the policy because the policy was issued to her and she retained the right to change the beneficiaries. Also the policy provided that in the event of the prior death of the beneficiary, the proceeds would be payable to insured's estate, which is not the situation here. The court pointed out that when under the terms of the insurance contract the insured has the right to change the beneficiary, the latter has no vested interest in the proceeds, but only an expectancy. And since the husband-beneficiary in *Slocum* by his conduct had raised a *personal* bar to his recovery, the administrator of the insured's estate could recover the proceeds. See also *Johnston v. Metropolitan Life Ins. Co.,* 85 W. Va. 70, 100 S. E. 865 (1919); 4 Couch, Insurance 2d, sec. 27:162, p. 710 (1960). We have found no cases, and respondent cites us to none, in which insurance proceeds were awarded to the estate of a feloniously killed insured who clearly did not have an interest in the insurance contracts or the proceeds. The *Slocum* case does not stand for such a conclusion.

We do not agree with petitioners, however, either that the insurer's obligation to pay the proceeds was canceled, or that the value of the policies is not includable in Harry's estate for Federal estate tax purposes.

Turning first to the insurer's obligation to pay, there appear to be three policies of law which pertain to this question. First, is that a beneficiary who feloniously kills the insured may not benefit by his deed. *Slocum v. Metropolitan Life Ins. Co., supra.* Second, however, is that the above "doctrine ought not to be

stretched beyond what is necessary for the protection of the public," *Slocum v. Metropolitan Life Ins. Co., supra,* quoting at 139 N. E. at 817, *Cleaver v. Mutual Reserve Fund Life Association,* [1892] 1 Q.B. 147, 152–153, 3 L.R.A. (n.s.) 727n. Or as said in *Johnston v. Metropolitan Life Ins. Co., supra,* "[the] doctrine * * * will not be carried by the courts any further than is necessary to prevent resort to them for the purpose of effecting a fraudulent purpose." And third, is that the insurer's contractual duty to pay the policy proceeds ought not be voided—

if the matter can be dealt with so that * * * [the felonious beneficiary] should not be benefited, I do not see any reason why the * * * [insurer] in such a case should be allowed to say, though * * * [it] might have received premiums perhaps for thirty years and still retained the same, that public policy forbade their paying the sum of money which they had contracted to pay. *[Slocum v. Metropolitan Life Ins. Co., supra* at 817, quoting *Cleaver v. Mutual Reserve Fund Life Association, supra.]*

See also *Beck v. West Coast Life Ins. Co.,* 38 Cal.2d 643, 241 P. 2d 544 (1952); *Moore v. Prudential Ins. Co. of America,* 342 Pa. 570, 21 A. 2d 42 (1941).[5]

We believe that the *Slocum* case itself, decided by the highest court of Massachusetts, stands for the proposition that the insurer's obligation to pay under the contract is not voided simply because the beneficiary feloniously killed the insured, where there is no showing of fraud against the insurance company and if the proceeds can be paid to someone having an interest therein so that the beneficiary does not benefit from his felonious act. The insurer's obligation was not voided in *Slocum.* Here, the insurance company did not seek to avoid payment of the proceeds; and the Probate Court found parties to whom the proceeds could be paid that had an interest therein, i.e., the children of Harry and Elizabeth who were beneficiaries under the wills of both and were heirs-at-law of both. We have no doubt

---

[5] Most courts which held an insurer under no obligation to pay proceeds have done so on a finding that the policy was void ab initio because fraudulently obtained, the beneficiary having at the time the policy was issued the intent to slay the insured. See, e.g., *Colyer's Admr. v. New York Life Ins. Co.,* 300 Ky. 189, 188 S. W. 2d 313 (1945); *Columbian Mut. Life Ins. Co. v. Martin,* 136 S. W. 2d 52 (Tenn. 1940); *Aetna Life Ins. Co. v. Strauch,* 179 Okla. 617, 67 P. 2d 452 (1937). There is no claim in this case that Harry obtained the policies from John Hancock having already formed a felonious intent to kill Elizabeth.

In one instance an insurer appears to have been allowed to retain the proceeds for lack of a payee not barred by public policy. *State v. Phoenix Mut. Life Ins. Co.,* 114 W. Va. 109, 170 S. E. 909 (1933); *Wickline v. Phoenix Mut. Life Ins. Co.,* 106 W. Va. 424, 145 S. E. 743 (1928).

that the Supreme Court of Massachusetts would have approved the order of the Probate Court if presented with the question.

The final question on this issue is whether these policies are taxable in Harry's estate. This is a question that must be decided under Federal law. Section 2033, I.R.C. 1954, quoted in footnote 2, provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

Harry owned all the incidents of ownership in these policies, and was also the named beneficiary therein. Under the doctrine of the *Slocum* and other cases, he could not personally recover the proceeds of the policies in his capacity as beneficiary, and his estate probably could not do so either. But Harry's felonious act did not void the policies; at the time of his death he owned the policies but was debarred from claiming under them. His interest as owner was in the policies themselves, not in the proceeds thereof. The value of that interest was the face value of the policies less the loans outstanding at the time of Elizabeth's death, or a total of $78,345.68. Upon his death, his interest in the policies passed to the persons entitled thereto as determined by the State court. For purposes of the Federal estate tax, we are not concerned with who those persons might be; we are concerned only with whether Harry had an interest in this property which passed to others at the time of his death.

Because neither the "Harry E. Draper Insurance Trust" instrument nor a summary thereof is in the record, we cannot determine who had interests in Harry's intangible assets under his will. But this is of no moment because Harry did not direct the disposition of the insurance proceeds, and we have doubts that the *Slocum* doctrine would have permitted him to do so. Harry did not benefit from his felonious act by either receiving the proceeds on the insured's death or directing their disposition. The Probate Court "in the exercise of its equity powers" directed that the policy proceeds be distributed to the children of Harry and Elizabeth. Any arguable benefit to Harry Draper could be vitiated by shaping the terms of the disposition to match the analogous terms of Elizabeth's will, as the Probate Court did to a large extent. The Probate Court's jurisdiction to act with respect to the policy proceeds was founded on the fact that Harry was the owner of the policies and they became a part of his estate.

We find nothing in the *Slocum* case nor the doctrine espoused therein that would require exclusion of the value of these policies from Harry's estate for Federal estate tax purposes. The public policy relied on therein would prevent Harry from personally benefiting from his felonious act. Neither Harry nor his estate benefits from the inclusion of the value of these policies in his taxable estate. It would be stretching that public policy beyond the bounds of public necessity to require exclusion of the value of these policies from Harry's estate for tax purposes. In fact it might be said that Harry's estate benefited from his felonious act if, as a result thereof, the value of these policies are excluded from his estate for tax purposes.

We conclude that the value of the two John Hancock policies are includable in Harry's taxable estate.

An issue was raised in the petitions with respect to $29,914.50 in value of furniture and furnishings, a claim for insurance for theft of silver after Elizabeth's death, and two automobiles. Under Elizabeth's will these properties were bequeathed to Harry. They were included as assets in the estate tax return for Elizabeth's estate at a total value of $33,424.50, and a marital deduction in the same amount was claimed. The same assets, with a total value of $29,914.50 (the insurance claim being reduced from $11,700 as reported on the estate tax return for Elizabeth's estate to $8,190 as reported on the return for Harry's estate), were reported as assets of Harry's estate in the estate tax return. In the notice of deficiency issued to Elizabeth's estate, the marital deduction of $33,424.50 was disallowed for the reason mentioned in our summary of facts, but the assets were not excluded from the estate. These assets were not excluded from Harry's estate in the notice of deficiency issued to it.

This case was submitted on a stipulation of facts. The only reference to these items in the stipulation is in paragraph 19 which reads: "In Docket No. 6162–73 (Elizabeth's Estate), the parties agree to a marital deduction adjustment of $29,914.50 (rather than $33,424.50 as set forth in the deficiency notice)."

On brief petitioners argue that the purport of the stipulation was that under the doctrine of the *Slocum* case Harry could not have taken anything as a beneficiary under Elizabeth's will because he had murdered her, so consequently the marital deduction (in the reduced agreed-upon amount) was properly disallowed, and the assets should have been excluded from Harry's

estate. Respondent on brief, arguing in the alternative with respect to the two estates, claims that the stipulation in paragraph 19 relates only to the marital deduction disallowance in Elizabeth's estate and that the value of the assets are includable in Harry's estate.

We find petitioners' argument to be the correct interpretation of the purport of the stipulation; and we do not believe respondent urges to the contrary except to protect his alternative positions. But in the event there is a real dispute, we conclude that these assets (which had an actual value of $29,914.50 rather than $33,424.50 as reported on Elizabeth's estate tax return) were owned by Elizabeth at the time of her death and are includable in her estate at the reduced value, that under the doctrine of the *Slocum* case Harry could not inherit these assets, that no marital deduction for these assets is allowable to Elizabeth's estate, and that the value of these assets is not includable in Harry's estate.

Our conclusion (that there is no real dispute remaining between the parties with respect to this issue) is supported by the fact that no claim was made for a previously taxed property deduction for Harry's estate, which should be allowable if these assets are included in both estates, and that no specific stipulation was made reducing the value of these assets in Elizabeth's estate from $33,424.50 to $29,914.50, which should follow if the adjustment to the marital deduction was reduced by a like amount.

The distinction between our conclusion with respect to these assets and the proceeds of the life insurance policies discussed in the main body of this opinion is that Elizabeth owned these assets while Harry owned the insurance policies, as should be apparent from our discussion of the proceeds of the insurance policies in our opinion.

*Decisions will be entered under Rule 155.*