410 F.Supp. 937 (1976)
NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Plaintiff,
v.
James Henry CALVERT et al., Defendants.
No. 73-324C(4).
United States District Court, E. D. Missouri, E. D.
March 23, 1976.
P. Terence Crebs, St. Louis, Mo., for plaintiff.
Rooney, Webbe, Davidson & Schlueter, St. Louis, Mo., for James H. Calvert and Ronald Calvert.
Andrew P. Deschu, St. Louis, Mo., for Shirley Ann Null.
Nangle & Schwartz, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon plaintiff's motion for summary judgment. Plaintiff filed suit herein, pursuant to 28 U.S.C. §§ 1332 and 2201, seeking a declaratory judgment that certain *938 insurance policies issued by plaintiff on the life of Victor Null are void. In its pleadings, plaintiff asserted a variety of allegations in support of its claim of voidness. In the present motion plaintiff asserts that from the pleadings and transcript of the proceedings in United States v. Calvert, No. 74-107 CR (3) (E.D.Mo.1974), plaintiff is entitled to summary judgment for the reason that the policies were void ab initio.
In United States v. Calvert, reported at 523 F.2d 895 (8th Cir. 1975), cert. denied, ___ U.S. ___, 96 S.Ct. 1106, 47 L.Ed.2d 314, 44 U.S.L.W. 3471 (1976), defendant Ronald Calvert was charged with, and convicted of, twelve counts of mail fraud in violation of 18 U.S.C. §§ 371, 1341 and 1343. The facts underlying the convictions were briefly as follows: On May 24, 1972, James Calvert, as financial backer, entered into a partnership agreement with Victor Null, an inventor. Acting through his father James Calvert, Ronald Calvert obtained life insurance policies on the life of Mr. Null from various insurance companies in an amount in excess of two million dollars. There were two policies issued by plaintiff herein, both policies specifying that Missouri law applies. On July 7, 1972, an application for $500,000.00 worth of insurance was requested from plaintiff. This application specified that James Calvert, as a business partner, was to be the owner and beneficiary of the policy. The home office approved only $150,000.00 business and $100,000.00 personal insurance on Null's life. Because of this change, an application from Mr. Null for personal insurance in the amount of $100,000.00 was required. An application was filled out and signed by Mr. Null on July 21, 1972. The beneficiary named on the application was "Estate of Insured". On July 25, 1972, an assignment of beneficiary form was completed by Mr. Null making James Calvert the beneficiary on the $100,000.00 policy. This was apparently not received by plaintiff's home office until September 5, 1972. There is evidence that both the application and the assignment of beneficiary form were submitted at the same time. See United States v. Calvert, at 900, fn. 2. The premiums for the policies, in the amount of $5,616.00, were paid by a check signed by James Calvert by July 24, 1972. On November 9, 1972, Mr. Null was found dead in his East St. Louis workshop, having been shot four times. The murderer was never found.
Count III of the indictment, charging defendant with violations of 18 U.S.C. §§ 1341 and 2, referred to the July 7, 1972 application for insurance. Count V of the indictment, charging violations of the same sections of Title 18, referred to the July 21, 1972 application for insurance made by Mr. Null. Count VI of the indictment, again charging violations of the same sections of Title 18, referred to the Change of Beneficiary form.
Title 18 U.S.C. § 1341 provides that:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, . . . or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
The jury was instructed, in part, that
The government has the burden of proving beyond a reasonable doubt that the defendant Ronald Calvert had a then present intent to murder Victor Null or to participate in a scheme to cause him to be murdered at the time any document was mailed or caused to be mailed or any communication was made or caused to be sent as charged *939 in Counts I and II of the Indictment. Unless you find that he had such a then present intent as to each of these counts then you must return a verdict of not guilty as to each such count.
Having found Calvert guilty as charged in the indictment, the jury, of necessity, found that he had an intent to murder, or to cause the murder of, Victor Null, at the time that the original application, the personal application, and the Change of Beneficiary form were made. Furthermore, by finding Calvert guilty of violations of 18 U.S.C. § 1341 in connection with the mailing of the Null application for personal insurance, and the Change of Beneficiary form, the jury found those acts to be part of the scheme to defraud or to obtain money and that as part of that scheme, Calvert mailed or caused those documents to be mailed.
Summary judgment "is an extreme remedy which should be sparingly employed." Giordano v. Lee, 434 F.2d 1227 (8th Cir. 1970). The Court, however, concludes that under the standards enunciated in Rule 56, Federal Rules of Civil Procedure, and Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213 (8th Cir. 1951), a summary judgment is appropriate. The only factual issue involved in this motion is whether at the time the policies were procured, there was a then-present intent to kill the insured. This fact has already been determined by the jury in accordance with the stringent standard of beyond a reasonable doubt.
The first issue to be considered is the applicability of the criminal proceedings, United States v. Calvert, supra, to the present suit. In In re Estate of Laspy, 409 S.W.2d 725 (Mo.App.1966), the court considered this question in a suit involving facts similar to those herein. The court analyzed the various approaches and considerations that had been taken by courts in the past and concluded that the rule to be applied was that "the judgment of conviction is conclusive of the facts adjudicated". Id. at 734, 736. The court concluded that Laspy's conviction for manslaughter was "conclusive evidence in this civil suit that the killing of her husband was not done in self defense, was legally unjustifiable, and was an intentional manslaughter  hence, a crime that bars her from any benefit arising out of her victim's estate . . .". Id. at 736. See also Connecticut Fire Insurance Co. v. Ferrara, 277 F.2d 388 (8th Cir. 1960), cert. denied, 364 U.S. 903, 81 S.Ct. 231, 5 L.Ed.2d 195 (1960). It is clear, therefore, that the convictions in United States v. Calvert, supra, are conclusive of the fact that the murder of Mr. Null was an integral part of the scheme to defraud or to obtain money by means of false or fraudulent pretenses. In light of the jury instructions given, it is equally clear that this scheme, encompassing the plan to murder Mr. Null, existed at the time of the procurement of both insurance policies issued by plaintiff herein.
Because the convictions are conclusive herein, defendants would be precluded from presenting any evidence contrary to the facts found by the jury. Thus, defendants could not produce evidence tending to show that the plan to cause Mr. Null's death arose at a date later than the applications for insurance. Nor could defendants prove that the policy for $100,000.00 worth of insurance originally owned by Mr. Null was not a part of the scheme of defraud. It is worth emphasis that the proceedings in United States v. Calvert lasted four weeks. Defendant therein was ably represented by counsel in a hard-fought test. There is no reason to believe that there is any reliable evidence left unpresented. Furthermore, the burden of proof in the criminal proceeding was that of beyond a reasonable doubt, the highest standard of proof required.
The law is clear that a beneficiary who murders or causes the murder of the insured is precluded from recovering the proceeds of an insurance policy. This rule stems from the cardinal principle that no man should profit from his own wrong. In re Estate of Laspy, supra; Wells v. Harris, 434 S.W.2d 783 *940 (Mo.App.1968); Hopkins v. Metropolitan Life Ins. Co., 151 S.W.2d 527 (Mo.App. 1941); General American Life Insurance Co. v. Cole, 195 F.Supp. 867 (E.D.Mo. 1961).
While most of these cases have arisen in the context of a conviction for either murder or manslaughter, it is clear that the controlling principle is the fact that the beneficiary intentionally caused the death of the insured. See, New York Mutual Life Insurance Company v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997 (1886); Tippens v. Metropolitan Life Insurance Co., 99 F.2d 671 (5th Cir. 1938); Rosenberger v. Northwestern Mutual Life Insurance Company, 176 F.Supp. 379 (D.C.Kan.1959), modified, 182 F.Supp. 633 (D.C.Kan.1960); Metropolitan Life Insurance Co. v. McDavid, 39 F.Supp. 228 (E.D.Mich.1941); Jackson v. Prudential Insurance Co. of America, 106 N.J.Super. 61, 254 A.2d 141 (1969); Chase v. Jenifer, 219 Md. 564, 150 A.2d 251 (1959); David v. Unity Life Insurance Co., Inc., 43 So.2d 67 (La.App.1949); In re Estate of Laspy, supra; Greer v. Franklin Life Insurance Co., 148 Tex. 166, 221 S.W.2d 857 (1949); 1A Appleman, Insurance Law and Practice § 384, p. 12.
Where the beneficiary has intentionally killed the insured, the general rule is that the proceeds of the policy are payable to contingent beneficiaries, if any, or the estate of the insured. See 1A Appleman, Insurance Law and Practice § 381, p. 5; 27 A.L.R.3d 794, Annotation, Killing of the Insured by Beneficiary as Affecting Life Insurance or its Proceeds, p. 799.
Plaintiff herein seeks to avoid liability on the policy altogether by asserting that the conviction in United States v. Calvert, supra, conclusively shows that at the time the policies were procured, there existed an intention to murder Victor Null. The rule is that an insurer is "absolutely relieved of all liability" under the policy "[w]here the policy was procured by the beneficiary intending at the time the insurance was secured to murder the insured". 1A Appleman, Insurance Law and Practice § 382, p. 5 [emphasis added]. See also New York Mutual Life Insurance Company v. Armstrong, supra; Hewitt v. Equitable Life Assurance Society of United States, 8 F.2d 706 (9th Cir. 1925); Henderson v. Life Insurance Company of Virginia, 176 S.C. 100, 179 S.E. 680 (1935); Colyer's Administrator v. New York Life Insurance Co., 300 Ky. 189, 188 S.W.2d 313 (1945); West Coast Life Insurance Co. v. Crawford, 58 Cal.App.2d 771, 138 P.2d 384 (Cal.App.1943); Aetna Life Insurance Company v. Strauch, 179 Okl. 617, 67 P.2d 452 (1937), overruled on other grounds, Howard v. Jessup, 519 P.2d 913 (Okl.1973); 46 C.J.S. Insurance § 1171, p. 59; 27 A.L.R.3d 794, Annotation, Killing of Insured by Beneficiary as Affecting Life Insurance of its Proceeds, p. 799.
Defendant Null, administratrix of the estate of Victor Null, argues that this principle can not be applied to void ab initio the $100,000.00 insurance policy applied for by Null personally. The argument is that Victor Null could not have been part of the conspiracy to murder himself and that the only fraud involved in connection with this policy was the Change of Beneficiary form. The jury in United States v. Calvert, supra, found otherwise. By finding Calvert guilty under Count V of the indictment, the jury found that the mailing of the application was part of the scheme by Calvert to defraud. That Mr. Null himself filled out the requested information for the policy is of no import. Clearly such information would come from the insured. He also supplied the information for the policy issued to James Calvert as business partner. Defendant Null does not contest plaintiff's assertion of invalidity as to the business policy. It is sufficient that the jury found that Calvert caused the application for personal insurance to be mailed with the then-existing intent to cause Null's murder. Such a finding is not without support in the law. See Lakin v. Postal Life and Casualty Insurance Co., 316 S.W.2d 542 (Mo.1958) wherein the court stated: "Appellant *941 personally paid the premium thereon, and he simultaneously made arrangements to be designated as beneficiary and to have the policy assigned to him. This unquestionably constituted one transaction whereby appellant caused to be issued for his own benefit a policy of insurance . . .". Id. at 552. In Aetna Life Insurance v. Strauch, supra, the court held
. . . if the beneficiary conceived the idea of murdering the insured prior to the time the insurance was procured and with that thought in mind, the beneficiary himself procured the policy either in person or acting through the insured as an innocent instrumentality so that the insurance policy was in actual fact at its inception a contract between the beneficiary and the Insurance Company . . . the Insurance Company . . . may defeat liability on the grounds of fraud. Id. at 453.
See also Colyer's Administrator v. New York Life Insurance Co., supra. In the present context, the jury conviction in United States v. Calvert, supra, is conclusive of the fact that the mailing of the application for personal insurance was part of Calvert's scheme to defraud and that it was Calvert who caused the mailing. Accordingly, defendant Null's contentions are without merit.
The rule sought to be applied is that a policy is void where it was procured by the beneficiary, intending at the time to murder the insured. The Court is aware that it is James Calvert who is the named beneficiary on the policies while it is Ronald Calvert who stands convicted. Nonetheless, the facts underlying the conviction in United States v. Calvert clearly establish that Ronald Calvert was to be a beneficiary of the proceeds of the policies. As the Court of Appeals noted, "defendant [Ronald Calvert] stood convicted of a cold-blooded scheme, involving the stalking and selecting of a victim with the intention of murdering him for the purpose of obtaining money." At 914 [emphasis added]. Under such circumstances, the Court concludes that Ronald Calvert must be included within the meaning of the word "beneficiary" as that word is used in the rule that an insurer is relieved of all liability where insurance was procured by the beneficiary intending at the time to kill the insured. Cf., United States v. Fidelity & Guaranty Company v. Moore, 306 F.Supp. 1088, 1094 (N.D.Miss.1969).
Defendants have filed a variety of counterclaims against plaintiff. These counterclaims proceed from the assertion that the policies involved were valid at some point in time. Having found that the policies were void ab initio, and that the insurer is relieved of all liability thereunder, the counterclaims will be dismissed.
Premium payments in the amount of $5,616.00 were paid to plaintiff. Plaintiff has indicated a willingness to pay such premiums into the Court. While the testimony in United States v. Calvert, supra, was to the effect that the premiums were paid by a check signed by James Calvert, defendant Null has asserted that one policy was purchased by Mr. Null himself. Under these circumstances, the Court will order plaintiff to pay the premiums into the Court and will set a hearing for a determination of the question of which party defendant is entitled to a return of the premium payments.